**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Pamela Jean GANTT, Defendant–
Appellee.**

No. 98–50171.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1999.

Submission withdrawn Jan. 12, 1999.

Resubmitted May 25, 1999.

Filed June 7, 1999.

Amended Oct. 14, 1999.

Joseph Brannigan, Assistant United States Attorney, San Diego, California, for the plaintiff-appellant.

Benjamin Coleman, Federal Public Defender, San Diego, California, for the defendant-appellee.

Before: LAY,[1] GOODWIN, and SCHROEDER, Circuit Judges.

## ORDER

The opinion filed June 7, 1999, slip op. 5781 and appearing at 179 F.3d 782 (9th Cir.1999), is amended as follows:

1. At slip. op. 5785, 179 F.3d at 784, in the fourth sentence of the first paragraph of Part I, change "Federal Public Defender" to "Public Defender".

2. At slip op. 5794–5797, 179 F.3d at 789–91, replace Part V of the opinion with:

## V. Rule 41(d)'s Service Requirement

The government violated F.R.Cr.P. 41(d) by failing to present Gantt with a complete copy of the warrant at the outset of the search of her apartment. Gantt was not served with the complete warrant until after she was arrested and taken to an FBI office, hours after the search of her apartment began and hours after she requested to see the warrant.[7] Rule 41(d) provides in pertinent part: "[t]he officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken or shall leave the copy and receipt at the place from which the property was taken...." The government argues that this language never requires

service on the person; leaving the warrant behind after the search always suffices. In this case, the government suggests the rule was satisfied because the agents left the complete warrant at the apartment after the conclusion of the search and Gantt's arrest. We reject the government's reading of Rule 41(d). Absent exigent circumstances, Rule 41(d) requires service of the warrant at the outset of the search on persons present at the search of their premises.

Rule 41(d) must be interpreted in the light of the important policies underlying the warrant requirement-to provide the property owner assurance and notice during the search. The Supreme Court has repeatedly held that an essential function of the warrant is to "assure[ ] the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *United States v. Chadwick*, 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), *abrogated on other grounds*, *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). *See also Michigan v. Tyler*, 436 U.S. 499, 508, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) ("a major function of the warrant is to provide the property owner with sufficient information to reassure him of the entry's legality"); *United States v. Martinez–Fuerte*, 428 U.S. 543, 566, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (Without a warrant the occupant has "no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization.") (*quoting Camara v. Municipal Court*, 387 U.S. 523, 532, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)); *Steagald v. United*

---

**1.** Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

**7.** Showing Gantt the face of the warrant without Attachment A certainly did not satisfy Rule 41(d). Without Attachment A, the warrant violated the Fourth Amendment's particularity requirement and for purposes of Rule 41(d) was not a valid warrant. *See United States v. Van Damme*, 48 F.3d 461, 466 (9th Cir.1995); *Matter of Property Belonging to Talk of the Town Bookstore, Inc.*, 644 F.2d 1317, 1319 (9th Cir.1981).

*States*, 451 U.S. 204, 226, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) (Rehnquist, J., dissenting) (search warrants "assure[ ] the occupants that the police officer is present on official business."). Even the dissenters in *Chadwick* agreed on this basic function of the search warrant. *See Chadwick*, 433 U.S. at 20 n. 1, 97 S.Ct. 2476 (Blackmun, Rehnquist, JJ., dissenting) (agreeing that in the search of a home or office, a warrant's functions include "assur[ing] the occupants that the officers have legal authority to conduct the search").

In addition to this "assurance" function, this Court has frequently explained that the particularized warrant requirement is also intended " 'to give notice to the person subject to the search what the officers are entitled to seize.' " *In the Matter of Seizure of Property Belonging to Talk of the Town Bookstore, Inc.*, 644 F.2d 1317, 1318 (9th Cir.1981) (quoting *United States v. Marti*, 421 F.2d 1263, 1268 (2d Cir.1970)). *Accord United States v. McGrew*, 122 F.3d 847, 850 (9th Cir.1997); *United States v. Van Damme*, 48 F.3d at 466 (9th Cir.1995) (since affidavit did not accompany warrant "Van Damme could look at no document specifying what the officers could take."); *United States v. Towne*, 997 F.2d 537, 545 (9th Cir.1993); *United States v. Hayes*, 794 F.2d 1348, 1355 (9th Cir.1986) (one purpose of warrant is to "inform the person subject to the search what items the officers ... can seize.").

In light of these Supreme Court and Ninth Circuit precedents, there can be no doubt that the essential functions of the search warrant include assuring the subject of the search that her privacy is invaded only under a legal warrant and notifying her of the extent of the officer's authority.[8] The government's proposed reading of Rule 41(d) ignores these essential functions. If a person is present at the search of her premises, agents are faithful to the "assurance" and "notice" functions of the warrant only if they serve the warrant at the outset of the search. A warrant served after the search is completed cannot timely "provide the property owner with sufficient information to reassure him of the entry's legality." *Michigan*, 436 U.S. at 508, 98 S.Ct. 1942.

The search warrant requirement arose from the Founder's understanding that "[p]ower is a heady thing; and history shows that the police acting on their own cannot be trusted." *McDonald v. United States*, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948). The citizen whose home is invaded without service of a warrant must suffer the invasion while still in doubt of its legality. She must wonder if our Constitutional system has ensured that the "objective mind" of a neutral magistrate has "weigh[ed] the need to invade that privacy in order to enforce the law." *Id.* at 455, 69 S.Ct. 191. Citizens deserve the opportunity to calmly argue that agents are overstepping their authority or even targeting the wrong residence. For this reason, service of the warrant at the outset of the search is recommended by the distinguished authors of the Model Code of Pre–Arraignment procedure. *See* American Law Institute, A Model Code of Pre–Arraignment Procedure 132 (1975). Our law requires officers wishing to search a premises to first conduct an initial investigation, prepare affidavits, appear before a magistrate, obtain a search warrant, and bring copies of the complete warrant to the search. After agents have complied with all of these burdens, we cannot

---

**8.** Other major functions of the search warrant include interposing "a magistrate between the citizen and the police .... so that an objective mind might weigh the need to invade that privacy in order to enforce the law," *McDonald v. United States*, 335 U.S. 451, 455–56, 69 S.Ct. 191, 93 L.Ed. 153 (1948), and "limit[ing] the scope of the search, specifying what the police may search." *Steagald v. United States*, 451 U.S. 204, 226, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) (Rehnquist, J., dissenting).

understand why the government then objects to the agents spending a few seconds to serve the warrant as they begin their search, the final step in fulfilling two of the primary justifications for our warrant procedures.

We wish to emphasize that the government has not explained its opposition to serving the warrant at the outset of the search. Despite filing four separate briefs on appeal, it has not advanced one plausible justification for leaving the subjects of searches in doubt over the legality of the search or identified how serving the warrant at the outset of a search burdens effective law enforcement. The government suggests only that after reading the warrant people might conclude agents are overstepping the bounds of their authority and then resort to violence. The government's argument is illogical. Persons prone to physical confrontation with armed federal agents are not less likely to resort to violence if the warrant is kept from them. In fact, such persons may be more likely to conclude agents are overstepping their authority if they are not provided a warrant, particularly after asking to see one. Courts have typically assumed that the absence of a warrant creates a "greater potential for confrontation and violence." *United States v. Hepperle*, 810 F.2d 836, 839 (8th Cir. 1987). One of the purposes of requiring agents to "hand[ ] the occupant (when present) the warrant, like that of the 'knock and announce' rule, is to head off breaches of the peace by dispelling any suspicion that the search is illegitimate." *United States v. Stefonek*, 179 F.3d 1030, 1035 (7th Cir.1999).

We are not ignorant of the dangers to which federal agents are sometimes exposed in the execution of search warrants. If agents fear the subject of a search might be violent or troublesome, they have ample authority to remove that person from the scene of the search. *See United States v. Hudson*, 100 F.3d 1409, 1419–20 (9th Cir.1996).

The language of Rule 41(d) does suggest that the subjects of searches are to monitor the execution of the search: "The inventory shall be made in the presence of ... the person from whose possession or premises the property was taken, if they are present...." We do not, however, require agents to always abide by this provision. Believing Gantt was prone to violence, agents removed her from the apartment and prevented her from monitoring the search. There is no dispute over their authority to have done so. The dispute concerns only the government's unjustified failure to show her the warrant as the search began or even after she asked to see it.

The government's interpretation of the Rule also conflicts with a basic norm of statutory construction. If leaving the warrant behind after the search always suffices, there is no need for Rule 41(d) to include the more demanding requirement of service on the occupant of the searched premises. The first half of the rule is rendered mere surplusage. The canons of statutory interpretation require that the more demanding requirement be the preferred requirement. *Cf. United States v. Fiorillo*, 186 F.3d 1136, 1153 (9th Cir.1999) ("One provision of a statute should not be interpreted in a manner that renders other sections of the same statute 'inconsistent, meaningless or superfluous.'"); *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 834 (9th Cir.1996) ("We have long followed the principle that [s]tatutes should not be construed to make surplusage of any provision.") (internal quotation marks omitted).

The government alternatively argues that our interpretation conflicts with the Rule's use of the past tense in describing the subject of the search as "the person from whom or from whose premises the property *was taken.*" (Emphasis added). The government suggests Rule 41(d) only requires service of the warrant *after* the completion of the

search. The government points to the fact that agents did present the warrant to Gantt a few hours after the search. Not only does service after the search ignore much of the point of the service requirement, but a close examination of the entire Rule also belies the government's emphasis on tense. Rule 41(d) proceeds to require that "[t]he inventory ... be made in the presence of ... the person from whose possession or premises the property *was taken*, if they are present...." (Emphasis added.) The inventory is presumably made as items are identified and seized and not after the items have been taken away and sent to an FBI laboratory, yet the rule again describes the occupant of the premises using the "was taken" language. The government's emphasis on tenses supposes the Rule's drafters believed inventories are not made until after the property is carted away. We also note the grammatical conflict between "was taken" and "are present" in the above quoted language. The Rule's use of "from whom ... the property was taken" is just an awkward description of the occupant of the searched premises. The use of the past tense carries no substantive implications and does not conflict with our holding.

Finally, we find unpersuasive the government's lengthy discussion of supposedly conflicting precedent. The government focuses on *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), but our interpretation of Rule 41(d) is nearly compelled by that seminal opinion. In defending the legality under the federal rules of warrants authorizing electronic eavesdropping, the Supreme Court stated "Rule 41(d) does require federal officers to serve upon the person searched a copy of the warrant and a receipt describing the material obtained, but it does not *invari-*

*ably* require that this be done before the search takes place." *Katz*, 389 U.S. at 355 n. 16, 88 S.Ct. 507 (emphasis added). The government inexplicably proposes that this language means agents never need serve the warrant before the search. But if Rule 41(d) does not "invariably" require service before the search, then Rule 41(d) must *usually* require service before the search. Moreover, the Court was defending eavesdropping warrants against the charge that they did not provide *prior* notice to the subject of the search unlike "[a] conventional warrant [which] ordinarily serves to notify the suspect of an *intended* search." *Id.* (emphasis added); *see also id.* n. 22. *Katz*, the last word from the Supreme Court on the subject, supports our conclusion that, absent exigent circumstances,[9] Rule 41(d) requires service of the warrant at the outset of the search.

The government next contends our holding is contrary to the "prevailing view" in our sister circuits. We have examined the numerous cases cited by the government and find no such prevailing view. In fact, we find firm support for our interpretation of Rule 41(d). Our sister circuits have also recognized that the failure to serve the warrant on the subject of the search prior to the search is a violation of Rule 41(d) but have declined to mandate suppression. *See, e.g., Frisby v. U.S.*, 79 F.3d 29, 32 (6th Cir.1996) ("failure to furnish him with Attachment A prior to the search" was a violation of Rule 41(d) but not prejudicial enough to require suppression); *United States v. Charles*, 883 F.2d 355, 357 (5th Cir.1989) (same); *United States v. Bonner*, 808 F.2d 864, 869 (1st Cir.1986) (same). *United States v. Stefonek*, 179 F.3d 1030 (7th Cir.1999), cited by the government, is not on point be-

---

9. Exigent circumstances would, of course, include searches based on the ignorance of the subject of the search. *See, e.g., Katz*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (electronic

surveillance does not require notice to subject of search); *United States v. Johns*, 948 F.2d 599 (9th Cir.1991) ("sneak and peek" search requires ignorance of subject of search).

cause Stefonek argued that his premises should not have been searched in his absence. In rejecting that argument, however, Chief Judge Posner agreed that "[t]he purpose of handing the occupant (when present) the warrant [under Rule 41(d) ], like that of the 'knock and announce' rule, is to head off breaches of the peace by dispelling any suspicion that the search is illegitimate." *Id.* at 1035. This purpose can only be served, of course, if the warrant is handed to the occupant as the search begins. There is no conflict with any case cited to us from any of our sister circuits.[10]

The government is left with *Nordelli v. United States,* 24 F.2d 665 (9th Cir. 1928), in which we did state in passing that the predecessor of Rule 41(d), 18 U.S.C. § 622 (1928), did not require service of the warrant prior to the seizure. *See Nordelli,* 24 F.2d at 666. We decline to follow *Nordelli,* not because of its age, but because the language cited by the government is dicta, irrelevant to the holding. The defendants did not allege that the warrant was not served before the seizure; they only challenged the return of the warrant for failing to state that the warrant had been served. *See id.* We sensibly resolved the issue by noting that just because "the return

on the warrant failed to show that a copy of the warrant … was left as required by the statute, it does not follow that the papers were not left with the defendants as required by law." *Id.* Moreover, *Nordelli* proceeds to hold that a warrant was nonetheless unnecessary because the search was justified as a search incident to an arrest. *See id.* at 667. In short, we had no opportunity in *Nordelli* to determine whether § 622 required service before seizure.

We conclude that, absent exigent circumstances, if a person is present at the search of her premises, Rule 41(d) requires officers to give her a complete copy of the warrant at the outset of the search.

Violations of Rule 41(d) do not usually demand suppression, however. Under Ninth Circuit law, "technical" violations of Rule 41(d) require suppression only if there was a "deliberate disregard of the rule" or if the defendant was prejudiced. *See United States v. Negrete–Gonzales,* 966 F.2d 1277, 1283 (9th Cir.1992). Suppression is justified here because the violation was deliberate. (We need not thus consider whether the violation was "technical" or "fundamental.") The agents failed to show Gantt the complete

10. The government also cites cases holding Rule 41(d) does not always require the warrant to be present at the start of the search as long as the warrant arrives by the end of the search. *See, e.g., United States v. Woodring,* 444 F.2d 749, 751 (9th Cir.1971); *United States v. Ritchie,* 35 F.3d 1477, 1482–83 (10th Cir.1994); *Charles,* 883 F.2d at 357; *United States v. Hepperle,* 810 F.2d 836, 839 (8th Cir.1987); *Bonner,* 808 F.2d at 868–69. We do not believe these cases cast any doubt on our holding. These cases all rely, directly or indirectly, on the footnote from *Katz* cited above-Rule 41(d) does not "invariably" require service of the warrant before the execution of the search-and thus reinforce the idea that normally warrants must be served at the outset of a search. Some of these cases, in fact, conclude that the absence of the warrant at the start of the search *is* a violation of Rule 41(d), albeit not one requiring suppression. *See e.g., Charles,* 883 F.2d at 357; *Bonner,* 808 F.2d at 869.

In any case, the government can only begin searches before the arrival of a warrant for good cause, e.g., when time is of the essence. *See, e.g., Hepperle,* 810 F.2d at 839 (finding it foolhardy to proceed in the absence of the physical presence of the warrant). The Supreme Court has held that "inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate" does not justify ignoring the warrant requirement. *Johnson v. United States,* 333 U.S. 10, 15, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Similarly, inconvenience and slight delay cannot justify ignoring Rule 41(d). As long as there is a legitimate reason for beginning the search before the arrival of the warrant, such cases fall within the "exigent circumstances" exception to Rule 41(d)'s service requirement. In such cases, service of the warrant must obviously await the arrival of the warrant.

warrant even after she asked to see it. The government has provided no explanation or justification for the agents' failure. The government tries to argue Attachment A was unavailable because agents were using it to· conduct the search, but in its opening brief the government admits the agents had "multiple copies" of the complete warrant on-site. Nothing in the record indicates that none of the copies could be spared to show Gantt or that the agents were unable to make an extra copy of the warrant in the 16 hours between the issuance of the warrant and its execution. The government also claims the failure was not deliberate because "no previous case" has held that the warrant must be served on the subject of the search. We disagree. One of our recent cases held that under the Fourth Amendment, "[i]t is the government's duty to serve the search warrant on the suspect" in order to "inform the person subject to the search what items the officers executing the warrant can seize." [11] *See United States v. McGrew*, 122 F.3d 847, 850 (9th Cir.1997) (internal quotation marks omitted). The government might also consider the authorities it cited to us in its briefs. *See, e.g., Katz*, 389 U.S. at 355 n. 16, 88 S.Ct. 507; *Frisby*, 79 F.3d at 32 ("failure to furnish him with Attachment A prior to the search" was a violation of Rule 41(d)); *Charles*, 883 F.2d at 357 (same); *Bonner*, 808 F.2d at 869 (same).

Our Rule 41(d) jurisprudence requires suppression under these circumstances.

3. At slip op. 5798, 179 F.3d at 791, in the second sentence of the first paragraph of Part VII, change "deliberate and prejudicial" to "deliberate".

With the opinion thus amended, the panel has voted unanimously to deny the petition for rehearing. Judge Schroeder has voted to deny the petition for rehearing en banc, and Judges Lay and Goodwin recommended denial.

The full court has been advised of the petition for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R.App. P. 35.

The petition for rehearing is DENIED and the petition for rehearing en banc is DENIED.

## OPINION

GOODWIN, Circuit Judge:

In this interlocutory appeal from a suppression order, the government argues that F.R.Cr.P. 41(d) does not require agents to serve a copy of a search warrant on a person present at the search of her property. Instead, the government contends that Rule 41(d) is satisfied if a copy of the warrant is left behind at the scene after the search is completed, even if the person is first arrested and thus has no opportunity to examine the warrant left behind. We reject the government's interpretation of Rule 41(d) and affirm the district court's suppression order. Before we reach the merits of the appeal, however, we must consider whether this appeal is properly taken under 18 U.S.C. § 3731.

## I. Procedural and Factual Background

The parties appear to agree on all of the facts essential to this appeal. The government has indicted Gantt under 18 U.S.C. §§ 115, 876, and 1114 for threatening to assault and kill an FBI agent. The

---

11. Gantt relies heavily on *McGrew*, and the district court also relied on *McGrew*'s interpretation of the Fourth Amendment to suppress the evidence. *McGrew* was decided on September 12, 1997, more than two months before the search of Gantt's apartment. Because Rule 41(d) requires suppression, we need not consider *McGrew*'s interpretation of

the Fourth Amendment. The Supreme Court recently declined to address "how detailed the notice of the seizure must be or when the notice must be given" under the Fourth and Fourteenth Amendments. *See City of West Covina v. Perkins*, 525 U.S. 234, 119 S.Ct. 678, 681, 142 L.Ed.2d 636 (1999).

threats were made in numerous phone calls and letters. The government suspects Gantt because she plead guilty in 1993 to making similar threats to a Public Defender in Washington state who had represented a man accused of raping Gantt. The FBI Agent began receiving the threats while she was investigating the Public Defender's complaint that Gantt had recently resumed the threatening phone calls.

At 6:30 am, on November 25, 1997, the FBI executed a search warrant on Gantt's room in a San Diego hotel. The warrant did not specify the suspected criminal activity.[2] Instead of describing the items to be seized, the warrant stated "[s]ee Attachment A." Attachment A was a two-page, typed list of items to be seized including specific kinds of envelopes, paper, and postage stamps, items with the name or address of the FBI agent or Public Defender, typing materials, and items reflecting control of the apartment searched such as mail or keys.

Upon entering Gantt's residence, the agents did not present her with a copy of the warrant. Instead, they directed her to sit in the hallway while they conducted a three-hour search. The agents did not show Gantt the warrant under the authority of which they had invaded her privacy until Gantt herself asked to see the search warrant. The agents responded by showing her the face of the warrant but not Attachment A. Gantt did not specifically ask to see Attachment A. After concluding their search, the agents gave Gantt an inventory of items seized and left a copy of the warrant with Attachment A behind in the hotel room. Before Gantt could examine the copy of the warrant left in the hotel room, however, the agents arrested her and took her to an FBI office. Only at the FBI office was Gantt shown the entire warrant including Attachment A. Among the items seized that do not appear on the list in Attachment A were a fake grenade, Spanish language materials, business cards, pawn shop receipts, a check register, a vehicle registration, and ammunition.

The district court granted Gantt's motion to suppress the evidence seized from the hotel room. The government appeals.

## II. The Government's Failure to Timely Satisfy 18 U.S.C. § 3731

■ We must first consider whether the government's appeal should be dismissed for failure timely to meet the certification requirements of 18 U.S.C. § 3731.

Beginning in 1907, Congress has granted the government limited rights of appeal in criminal cases. *See* Criminal Appeals Act of 1907, 34 Stat. 1246 (March 2, 1907) (codified as amended at 18 U.S.C. § 3731). But not until 1968 did Congress provide the government the ability to bring interlocutory appeals of district court decisions to suppress evidence. *See* Omnibus Crime Control and Safe Streets Act of 1968, Title VIII, Pub.L. 90–351, 82 Stat. 197 (1968) (codified as amended at 18 U.S.C. § 3731). Prior to the enactment of this provision, government appeals of suppression orders had been prohibited in keeping with both the policy against piecemeal litigation and the traditional reluctance to allow government appeals in criminal cases. *See Di-Bella v. United States,* 369 U.S. 121, 131, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). The Supreme Court had held that "[o]rders granting or denying suppression ... are truly interlocutory" and not final orders for purposes of 28 U.S.C. § 1291.[3] *Id.*

---

**2.** Because we affirm the district court's suppression order on the basis of Rule 41(d) we do not consider the failure to specify the suspected criminal activity. We do repeat our frequent criticism of this practice. *See United States v. McGrew,* 122 F.3d 847, 849 n. 2 (9th Cir.1997) (citing *United States v. Kow,*

58 F.3d 423, 427 (9th Cir.1995) (collecting cases)).

**3.** For a detailed history of § 3731, see *United States v. Sisson,* 399 U.S. 267, 293–98, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970); *United States v. Carrillo–Bernal,* 58 F.3d 1490, 1494–97 (10th Cir.1995).

In abrogating the common law position reaffirmed in *DiBella*, Congress did not go so far as to grant the government unfettered authority to appeal suppression orders. Appeals are not permitted "after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information." 18 U.S.C. § 3731. Before an appeal is filed, Congress also requires that "the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." This requirement is designed to force federal prosecutors to consider whether the appeal is taken for a proper purpose before they force a defendant to relitigate the evidentiary issue. *See United States v. Carrillo–Bernal*, 58 F.3d 1490, 1493 (10th Cir.1995).

■ Unfortunately, some government attorneys from time to time treat the § 3731 certification requirement as a mere formality and even neglect to file the certification in a timely manner.[4] The failure to file the certificate does not oust our jurisdiction but does require us to decide whether to exercise our discretion under F.R.App.P. 3(a) to dismiss the appeal. *See United States v. Becker*, 929 F.2d 442, 445 (9th Cir.1991). While "the complete failure to file a certificate would clearly constitute a violation of the statute," *id.* at n. 1, we have previously accepted certificates filed even after oral argument. *See id.; United States v. Eccles*, 850 F.2d 1357, 1359–60 (9th Cir.1988). Other circuits have not been as generous, especially in recent years. *See, e.g., United States v. Salisbury*, 158 F.3d 1204, 1206–07 (11th Cir.1998) (dismissing appeal where certificate filed one month after notice of appeal); *Carrillo–Bernal*, 58 F.3d at 1492

(dismissing appeal where certificate filed after court alerted parties of deficiency); *United States v. Miller*, 952 F.2d 866, 876 (5th Cir.1992) (dismissing appeal where certificate filed after deficiency raised in defendant's brief).

In the present case, the government did certify that it was not pursuing this appeal for purposes of delay but failed to certify that the evidence suppressed is a "substantial proof" of a material fact. The deficiency was raised sua sponte by this court in a pre-argument order to show cause. Before oral argument, the government filed the appropriate certification. We choose to exercise our discretion not to dismiss this appeal.

The United States Attorney's Office for the Southern District of California has shown that despite its mistake, it does take the certification requirements of § 3731 seriously. *Cf. Carrillo–Bernal*, 58 F.3d at 1494 (condemning government's treating the certification requirement as a "meaningless formality"). The Office has described its internal procedures requiring senior officials carefully to review, in light of the requirements of § 3731, each request by a trial attorney for an appeal of a suppression order. The Office has also assured this Court that those procedures were followed in the present case, that the failure to provide the certification was a clerical error, and that those procedures are being reinforced as a result of this error. Given the serious attention the United States Attorney appears to be devoting to the issue, we do not dismiss the appeal. Moreover, though the government's oversight has led to a considerable waste of judicial resources, the defendant has suffered no prejudice.

---

4. *See, e.g., United States v. Becker*, 929 F.2d 442, 444–445 (9th Cir.1991) (USA, Oregon); *United States v. Eccles*, 850 F.2d 1357, 1359–60 (9th Cir.1988) (U.S. Department of Justice); *United States v. Bailey*, 136 F.3d 1160, 1163–64 (7th Cir.1998) (USA, Central District of Illinois); *United States v. Salisbury*, 158 F.3d 1204, 1206–07 (11th Cir.1998) (USA, Northern District of Alabama); *United States v. Carrillo–Bernal*, 58 F.3d 1490 (10th Cir. 1995) (USA, District of New Mexico); *United States v. Miller*, 952 F.2d 866, 876 (5th Cir. 1992) (USA, Middle District of Louisiana).

■ The Ninth Circuit does require "more than the prosecutor's bare certification" to the district court to establish § 3731 compliance; the government must also demonstrate to this Court the existence of the two § 3731 conditions. *United States v. Adrian,* 978 F.2d 486, 490–91 (9th Cir.1992); *see also United States v. Poulsen,* 41 F.3d 1330, 1333 (9th Cir.1994). The government concedes that it erred in not making a case for the § 3731 conditions in its opening brief. But because there has been no allegation or indication that the appeal is being pursued for delay and because the relevance to the indictment of the items seized is unquestioned, we conclude that § 3731 has been satisfied.

### III. Appointment of United States Attorneys By District Courts under 28 U.S.C. § 546(d)

■ In her reply to the government's response to our order to show cause, Gantt argues that the government's § 3731 certification is invalid because the appointment of the current United States Attorney for the Southern District of California by the judges of the Southern District of California pursuant to 28 U.S.C. § 546(d) violates the Appointments Clause. U.S. Const., Art. II, § 2, cl. 2.

Since the Civil War, the judiciary has been empowered to fill vacancies in the office of United States Attorney. *See* Act of March 3, 1863, chap. 93, § 2, 12 Stat. 768 (1863) (Rev.Stat. 1873, § 793). The current version of this appointment power is codified at 28 U.S.C. § 546(d). Section 546(a)-(c) authorizes the Attorney General "to appoint a United States attorney for the district in which the office of United States attorney is vacant" for 120 days. Upon the expiration of the Attorney General's appointment, § 546(d) provides that "the district court for such district may appoint a United States attorney to serve until the vacancy is filled," i.e., until a United States Attorney nominated by the President is confirmed by the Senate under 28 U.S.C. § 541.

■ We are forced to reach the merits of Gantt's constitutional challenge. An infirmity in the United States Attorney's appointment would not generally affect the jurisdiction of this court so long as a proper representative of the government participated in the action. *See United States v. Plesinski,* 912 F.2d 1033 (9th Cir.1990) (participation of improperly appointed government attorney does not affect court's jurisdiction over prosecution). The alleged infirmity would, however, nullify the § 3731 certification because, unlike many other rules, § 3731 specifically requires certification by "the United States Attorney." The constitutionality of § 546(d) would not affect the validity of indictments, by contrast, as indictments need only be signed by an "attorney for the government." *See* F.R.Cr.P. 7(c)(1); *United States v. Kouri–Perez,* 47 F.Supp. 2d 164 (D.P.R. 1999) (refusing to consider constitutionality of § 546(d) in motion to dismiss indictment given language of F.R.Cr.P. 7(c)(1)). While it may be possible for a United States Attorney to delegate § 3731 certification authority to a subordinate, see *United States v. Wolk,* 466 F.2d 1143, 1146 n. 2 (8th Cir.1972), if the United States Attorney's appointment is invalid, then her delegation is similarly invalid.

Following the modern trend we choose not to ratify the actions of an improperly appointed officer of the United States under the ancient "de facto officer" doctrine. *See Silver v. United States Postal Service,* 951 F.2d 1033, 1036 n. 2 (9th Cir.1991) (declining to apply de facto officer doctrine and questioning continued vitality of the doctrine); *see also United States v. Navarro,* 160 F.3d 1254 (9th Cir.1998) (reaching merits of defendant's argument that prosecuting Special Assistant United States Attorney was improperly appointed). If the United States Attorney has not been validly appointed, the government has taken this appeal in violation of § 3731, and we should decline to hear the appeal.

We are not convinced that Congress' decision to vest appointment of interim United States Attorneys in the district courts violates the Appointments Clause. The Clause requires principal officers to be appointed by the President with the "Advise and Consent" of the Senate. Congress may, however, "vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const., Art. II, § 2, cl. 2. Because United States Attorneys are "inferior" officers, § 546(d) passes constitutional muster.[5]

■ United States Attorneys are clearly "officers" of the United States. *See Buckley v. Valeo*, 424 U.S. 1, 126, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (an officer is "any appointee exercising significant authority pursuant to the laws of the United States"); 28 U.S.C. § 547 (delineating broad authority of United States Attorney to enforce federal law). Whether they are principal or inferior officers is less obvious.

■ The Constitution does not use the term "inferior" "in the sense of petty or unimportant" but in the sense of a subordinate to a principal officer. *Collins v. U.S.*, 14 Ct.Cl. 568, 574 (1878). The Supreme Court has recently reiterated that being an " 'inferior officer' connotes a relationship with some higher ranking officer or officers below the President: whether one is an 'inferior' officer depends on whether he has a superior .... 'inferior officers' are officers whose work is directed and supervised at some level by others who" are principal officers.[6] *Edmond v. U.S.*, 520 U.S. 651, 661–64, 117 S.Ct. 1573, 1580–81, 137 L.Ed.2d 917 (1997). In *Edmond*, the Supreme Court unanimously held that judges of the Coast Guard Court of Criminal Appeals are inferior officers because they are subject to administrative supervision by the Coast Guard Judge Advocate General (JAG) and judicial supervision by the Court of Appeals for the Armed Forces. *See id.*, 520 U.S. at 663–66, 117 S.Ct. at 1581–82.

In light of *Edmond*, we conclude that United States Attorneys are inferior officers. United States Attorneys are subject to closer supervision by a superior than the judges of the Coast Guard Court of Criminal Appeals. Congress has granted the Attorney General plenary authority over United States Attorneys. *See, e.g.*, 28 U.S.C. § 519 ("... the Attorney General ... shall direct all United States attorneys ... in the discharge of their respective duties."). The Attorney General has unfettered discretion to reassign cases from United States Attorneys to herself or to "any officer of the Department of Justice."

---

**5.** We do not distinguish between United States Attorneys appointed pursuant to 28 U.S.C. § 541 and those appointed under § 546(d). Section 546(d) appointments are fully-empowered United States Attorneys, albeit with a specially limited term, not subordinates assuming the role of "Acting" United States Attorney. *Cf. United States v. Eaton*, 169 U.S. 331, 343–44, 18 S.Ct. 374, 42 L.Ed. 767 (1898) (vice-counsel to Siam temporarily exercising powers of counsel when latter taken ill remained an inferior officer). The power to appoint "Acting" United States Attorneys appears to lie with the Attorney General under 28 U.S.C. §§ 509 (vesting Attorney General with functions of United States Attorneys), 510 (authorizing delegation of any authority to an officer of the Department of Justice), 542(a) (authorizing appointments of assistant United States Attorneys). *See also In re Grand Jury Proceedings*, 673 F.Supp.

1138 (D.Mass.1987) (comparing appointment under § 546(d) with Attorney General's appointment of "Acting" United States Attorney).

**6.** Given the Court's decision in *Morrison v. Olson*, 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), we recognize that supervision by a superior officer is a sufficient but perhaps not a necessary condition to the status of inferior officer. In *Morrison*, the Court held that the independent counsel was an inferior officer despite that, due to the nature of her office, the independent counsel is subject to only limited supervision by executive and judicial branch officers. The Court relied instead upon her limited jurisdiction and tenure and the power of removal granted to the Attorney General. *See id.* at 671–72, 108 S.Ct. 2597.

28 U.S.C. § 518(b). The Attorney General sets the salaries of United States Attorneys and approves the reimbursement of their office expenses. *See* 28 U.S.C. §§ 548, 549. An example of the supervision exercised by the Attorney General is her decision to require United States Attorneys to conduct state and federal appellate litigation only under the guidance of the Solicitor General. *See* 28 C.F.R. § 0.20(b). The one significant statutory limit on the Attorney General's supervision of United States Attorneys is Congress' decision to vest appointment and removal power in the President. *See* 28 U.S.C. § 541.

The few other authorities that have considered the matter have also concluded that United States Attorneys are inferior officers. *See United States v. Solomon,* 216 F.Supp. 835, 838–43 (S.D.N.Y.1963) (in dicta, approving constitutionality of predecessor of § 546(d) by presuming United States Attorneys are inferior officers), *cited with approval by Morrison v. Olson,* 487 U.S. 654, 676–77, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988); 2 Op. Off. Legal Counsel 58 (Feb. 28, 1978) (because United States Attorneys are inferior officers, vesting appointment and removal power in Attorney General would be constitutional).

Gantt argues that even if United States Attorneys are "inferior" officers, § 546(d) must be struck down because there is an "incongruity" in the appointment of a United States Attorney by the judges before whom she will appear. *Cf. Morrison,* 487 U.S. at 675–77, 108 S.Ct. 2597. This argument is without merit. *Morrison* itself cites § 546(d) and *Solomon* in support of the proposition that judicial appointment of prosecutors does not necessarily create an incongruity. *Id.*

Moreover, in passing on § 546(d) we consider the purpose of the Appointments Clause as enunciated by a unanimous Supreme Court in *Edmonds*-to "prevent congressional encroachment upon the executive and judicial branches." *Edmonds,* 520 U.S. at 659, 117 S.Ct. at 1579. The provisions of § 546(d) do not conflict with this purpose. The judicial branch is not required to appoint a United States Attorney; it is simply empowered to do so. More importantly, the President retains the power to replace the court-appointed United States Attorney with an Attorney appointed by the President and confirmed by the Senate.

We now turn to the merits of the appeal.

### IV. Standard of Review

■ The district court's decision to suppress is reviewed as a question of law, but the trial court's factual findings are, of course, reviewed for clear error. *See United States v. Kemmish,* 120 F.3d 937, 939 (9th Cir.1997), *cert. denied,* 522 U.S. 1132, 118 S.Ct. 1087, 140 L.Ed.2d 144 (1998).

### V. Rule 41(d)'s Service Requirement

■ The government violated F.R.Cr.P. 41(d) by failing to present Gantt with a complete copy of the warrant at the outset of the search of her apartment. Gantt was not served with the complete warrant until after she was arrested and taken to an FBI office, hours after the search of her apartment began and hours after she requested to see the warrant.[7] Rule 41(d) provides in pertinent part: "[t]he officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken or shall leave the copy and receipt at the place from which the property was taken...." The government argues that this language

---

**7.** Showing Gantt the face of the warrant without Attachment A certainly did not satisfy Rule 41(d). Without Attachment A, the warrant violated the Fourth Amendment's particularity requirement and for purposes of Rule 41(d) was not a valid warrant. *See United States v. Van Damme,* 48 F.3d 461, 466 (9th Cir.1995); *Matter of Property Belonging to Talk of the Town Bookstore, Inc.,* 644 F.2d 1317, 1319 (9th Cir.1981).

never requires service on the person; leaving the warrant behind after the search always suffices. In this case, the government suggests the rule was satisfied because the agents left the complete warrant at the apartment after the conclusion of the search and Gantt's arrest. We reject the government's reading of Rule 41(d). Absent exigent circumstances, Rule 41(d) requires service of the warrant at the outset of the search on persons present at the search of their premises.

Rule 41(d) must be interpreted in the light of the important policies underlying the warrant requirement-to provide the property owner assurance and notice during the search. The Supreme Court has repeatedly held that an essential function of the warrant is to "assure[ ] the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *United States v. Chadwick*, 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), *abrogated on other grounds, California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). *See also Michigan v. Tyler*, 436 U.S. 499, 508, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) ("a major function of the warrant is to provide the property owner with sufficient information to reassure him of the entry's legality"); *United States v. Martinez–Fuerte*, 428 U.S. 543, 566, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (Without a warrant the occupant has "no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization.") (*quoting Camara v. Municipal Court*, 387 U.S. 523, 532, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)); *Steagald v. United States*, 451 U.S. 204, 226, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) (Rehnquist, J., dissenting) (search warrants "assure[ ] the occupants that the police officer is present on official business."). Even the dissenters in *Chadwick* agreed on this basic function of the search warrant. *See Chadwick*, 433 U.S. at 20 n. 1, 97 S.Ct. 2476 (Blackmun, Rehnquist, JJ., dissenting) (agreeing that in the search of a home or office, a warrant's functions include "assur[ing] the occupants that the officers have legal authority to conduct the search").

In addition to this "assurance" function, this Court has frequently explained that the particularized warrant requirement is also intended " 'to give notice to the person subject to the search what the officers are entitled to seize.' " *In the Matter of Seizure of Property Belonging to Talk of the Town Bookstore, Inc.*, 644 F.2d 1317, 1318 (9th Cir.1981) (quoting *United States v. Marti*, 421 F.2d 1263, 1268 (2d Cir.1970)). *Accord United States v. McGrew*, 122 F.3d 847, 850 (9th Cir.1997); *United States v. Van Damme*, 48 F.3d at 466 (9th Cir.1995) (since affidavit did not accompany warrant "Van Damme could look at no document specifying what the officers could take."); *United States v. Towne*, 997 F.2d 537, 545 (9th Cir.1993); *United States v. Hayes*, 794 F.2d 1348, 1355 (9th Cir.1986) (one purpose of warrant is to "inform the person subject to the search what items the officers ... can seize.").

In light of these Supreme Court and Ninth Circuit precedents, there can be no doubt that the essential functions of the search warrant include assuring the subject of the search that her privacy is invaded only under a legal warrant and notifying her of the extent of the officer's authority.[8] The government's proposed reading of Rule 41(d) ignores these essential functions. If a person is present at the search of her premises, agents are faithful to the "assurance" and "notice"

---

**8.** Other major functions of the search warrant include interposing "a magistrate between the citizen and the police .... so that an objective mind might weigh the need to invade that privacy in order to enforce the law," *McDonald v. United States*, 335 U.S. 451, 455–56, 69 S.Ct. 191, 93 L.Ed. 153 (1948), and "limit[ing] the scope of the search, specifying what the police may search." *Steagald v. United States*, 451 U.S. 204, 226, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) (Rehnquist, J., dissenting).

functions of the warrant only if they serve the warrant at the outset of the search. A warrant served after the search is completed cannot timely "provide the property owner with sufficient information to reassure him of the entry's legality." *Michigan*, 436 U.S. at 508, 98 S.Ct. 1942.

■■■ The search warrant requirement arose from the Founder's understanding that "[p]ower is a heady thing; and history shows that the police acting on their own cannot be trusted." *McDonald v. United States*, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948). The citizen whose home is invaded without service of a warrant must suffer the invasion while still in doubt of its legality. She must wonder if our Constitutional system has ensured that the "objective mind" of a neutral magistrate has "weigh[ed] the need to invade that privacy in order to enforce the law." *Id.* at 455, 69 S.Ct. 191. Citizens deserve the opportunity to calmly argue that agents are overstepping their authority or even targeting the wrong residence. For this reason, service of the warrant at the outset of the search is recommended by the distinguished authors of the Model Code of Pre–Arraignment procedure. *See* American Law Institute, A Model Code of Pre–Arraignment Procedure" 132 (1975). Our law requires officers wishing to search a premises to first conduct an initial investigation, prepare affidavits, appear before a magistrate, obtain a search warrant, and bring copies of the complete warrant to the search. After agents have complied with all of these burdens, we cannot understand why the government then objects to the agents spending a few seconds to serve the warrant as they begin their search, the final step in fulfilling two of the primary justifications for our warrant procedures.

We wish to emphasize that the government has not explained its opposition to serving the warrant at the outset of the search. Despite filing four separate briefs on appeal, it has not advanced one plausible justification for leaving the subjects of searches in doubt over the legality of the search or identified how serving the warrant at the outset of a search burdens effective law enforcement. The government suggests only that after reading the warrant people might conclude agents are overstepping the bounds of their authority and then resort to violence. The government's argument is illogical. Persons prone to physical confrontation with armed federal agents are not less likely to resort to violence if the warrant is kept from them. In fact, such persons may be more likely to conclude agents are overstepping their authority if they are not provided a warrant, particularly after asking to see one. Courts have typically assumed that the absence of a warrant creates a "greater potential for confrontation and violence." *United States v. Hepperle*, 810 F.2d 836, 839 (8th Cir.1987). One of the purposes of requiring agents to "hand[ ] the occupant (when present) the warrant, like that of the 'knock and announce' rule, is to head off breaches of the peace by dispelling any suspicion that the search is illegitimate." *United States v. Stefonek*, 179 F.3d 1030, 1035 (7th Cir.1999).

■■■ We are not ignorant of the dangers to which federal agents are sometimes exposed in the execution of search warrants. If agents fear the subject of a search might be violent or troublesome, they have ample authority to remove that person from the scene of the search. *See United States v. Hudson*, 100 F.3d 1409, 1419–20 (9th Cir.1996). The language of Rule 41(d) does suggest that the subjects of searches are to monitor the execution of the search: "The inventory shall be made in the presence of ... the person from whose possession or premises the property was taken, if they are present...." We do not, however, require agents to always abide by this provision. Believing Gantt was prone to violence, agents removed her from the apartment and prevented her from monitoring the search. There is no dispute over their authority to have done so. The dispute concerns only the government's unjustified failure to show her the

warrant as the search began or even after she asked to see it.

The government's interpretation of the Rule also conflicts with a basic norm of statutory construction. If leaving the warrant behind after the search always suffices, there is no need for Rule 41(d) to include the more demanding requirement of service on the occupant of the searched premises. The first half of the rule is rendered mere surplusage. The canons of statutory interpretation require that the more demanding requirement be the preferred requirement. *Cf. United States v. Fiorillo*, 186 F.3d 1136, 1153 (9th Cir.1999) ("One provision of a statute should not be interpreted in a manner that renders other sections of the same statute 'inconsistent, meaningless or superfluous.' "); *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 834 (9th Cir.1996) ("We have long followed the principle that [s]tatutes should not be construed to make surplusage of any provision.") (internal quotation marks omitted).

The government alternatively argues that our interpretation conflicts with the Rule's use of the past tense in describing the subject of the search as "the person from whom or from whose premises the property *was taken*." (Emphasis added). The government suggests Rule 41(d) only requires service of the warrant *after* the completion of the search. The government points to the fact that agents did present the warrant to Gantt a few hours after the search. Not only does service after the search ignore much of the point of the service requirement, but a close examination of the entire Rule also belies the government's emphasis on tense. Rule 41(d) proceeds to require that "[t]he inventory . . . be made in the presence of . . . the person from whose possession or premises the property *was taken*, if they are present. . . ." (Emphasis added.) The inventory is presumably made as items are identified and seized and not after the items have been taken away and sent to an

FBI laboratory, yet the rule again describes the occupant of the premises using the "was taken" language. The government's emphasis on tenses supposes the Rule's drafters believed inventories are not made until after the property is carted away. We also note the grammatical conflict between "was taken" and "are present" in the above quoted language. The Rule's use of "from whom . . . the property was taken" is just an awkward description of the occupant of the searched premises. The use of the past tense carries no substantive implications and does not conflict with our holding.

■ Finally, we find unpersuasive the government's lengthy discussion of supposedly conflicting precedent. The government focuses on *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), but our interpretation of Rule 41(d) is nearly compelled by that seminal opinion. In defending the legality under the federal rules of warrants authorizing electronic eavesdropping, the Supreme Court stated "Rule 41(d) does require federal officers to serve upon the person searched a copy of the warrant and a receipt describing the material obtained, but it does not *invariably* require that this be done before the search takes place." *Katz*, 389 U.S. at 355 n. 16, 88 S.Ct. 507 (emphasis added). The government inexplicably proposes that this language means agents never need serve the warrant before the search. But if Rule 41(d) does not "invariably" require service before the search, then Rule 41(d) must *usually* require service before the search. Moreover, the Court was defending eavesdropping warrants against the charge that they did not provide *prior* notice to the subject of the search unlike "[a] conventional warrant [which] ordinarily serves to notify the suspect of an *intended* search." *Id.* (emphasis added); *see also id.* n. 22. *Katz*, the last word from the Supreme Court on the subject, supports our conclusion that, ab-

sent exigent circumstances,[9] Rule 41(d) requires service of the warrant at the outset of the search.

■■■■ The government next contends our holding is contrary to the "prevailing view" in our sister circuits. We have examined the numerous cases cited by the government and find no such prevailing view. In fact, we find firm support for our interpretation of Rule 41(d). Our sister circuits have also recognized that the failure to serve the warrant on the subject of the search prior to the search is a violation of Rule 41(d) but have declined to mandate suppression. *See, e.g., Frisby v. U.S.*, 79 F.3d 29, 32 (6th Cir.1996) ("failure to furnish him with Attachment A prior to the search" was a violation of Rule 41(d) but not prejudicial enough to require suppression); *United States v. Charles*, 883 F.2d 355, 357 (5th Cir.1989) (same); *United States v. Bonner*, 808 F.2d 864, 869 (1st Cir.1986) (same). *United States v. Stefonek*, 179 F.3d 1030 (7th Cir.1999), cited by the government, is not on point because Stefonek argued that his premises should not have been searched in his absence. In rejecting that argument, however, Chief

Judge Posner agreed that "[t]he purpose of handing the occupant (when present) the warrant [under Rule 41(d) ], like that of the 'knock and announce' rule, is to head off breaches of the peace by dispelling any suspicion that the search is illegitimate." *Id.* at 1035. This purpose can only be served, of course, if the warrant is handed to the occupant as the search begins. There is no conflict with any case cited to us from any of our sister circuits.[10]

The government is left with *Nordelli v. United States*, 24 F.2d 665 (9th Cir.1928), in which we did state in passing that the predecessor of Rule 41(d), 18 U.S.C. § 622 (1928), did not require service of the warrant prior to the seizure. *See Nordelli*, 24 F.2d at 666. We decline to follow *Nordelli*, not because of its age, but because the language cited by the government is dicta, irrelevant to the holding. The defendants did not allege that the warrant was not served before the seizure; they only challenged the return of the warrant for failing to state that the warrant had been served. *See id.* We sensibly resolved the issue by noting that just because "the return on the warrant failed to show that a copy of the

---

9. Exigent circumstances would, of course, include searches based on the ignorance of the subject of the search. *See, e.g., Katz*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (electronic surveillance does not require notice to subject of search); *United States v. Johns*, 948 F.2d 599 (9th Cir.1991) ("sneak and peek" search requires ignorance of subject of search).

10. The government also cites cases holding Rule 41(d) does not always require the warrant to be present at the start of the search as long as the warrant arrives by the end of the search. *See, e.g., United States v. Woodring*, 444 F.2d 749, 751 (9th Cir.1971); *United States v. Ritchie*, 35 F.3d 1477, 1482–83 (10th Cir.1994); *Charles*, 883 F.2d at 357; *United States v. Hepperle*, 810 F.2d 836, 839 (8th Cir.1987); *Bonner*, 808 F.2d at 868–69. We do not believe these cases cast any doubt on our holding. These cases all rely, directly or indirectly, on the footnote from *Katz* cited above-Rule 41(d) does not "invariably" require service of the warrant before the execution of the search-and thus reinforce the idea that normally warrants must be served at the outset of a search. Some of these cases, in

fact, conclude that the absence of the warrant at the start of the search *is* a violation of Rule 41(d), albeit not one requiring suppression. *See e.g., Charles*, 883 F.2d at 357; *Bonner*, 808 F.2d at 869.

In any case, the government can only begin searches before the arrival of a warrant for good cause, e.g., when time is of the essence. *See, e.g., Hepperle*, 810 F.2d at 839 (finding it foolhardy to proceed in the absence of the physical presence of the warrant). The Supreme Court has held that "inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate" does not justify ignoring the warrant requirement. *Johnson v. United States*, 333 U.S. 10, 15, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Similarly, inconvenience and slight delay cannot justify ignoring Rule 41(d). As long as there is a legitimate reason for beginning the search before the arrival of the warrant, such cases fall within the "exigent circumstances" exception to Rule 41(d)'s service requirement. In such cases, service of the warrant must obviously await the arrival of the warrant.

warrant ... was left as required by the statute, it does not follow that the papers were not left with the defendants as required by law." *Id.* Moreover, *Nordelli* proceeds to hold that a warrant was nonetheless unnecessary because the search was justified as a search incident to an arrest. *See id.* at 667. In short, we had no opportunity in *Nordelli* to determine whether § 622 required service before seizure.

We conclude that, absent exigent circumstances, if a person is present at the search of her premises, Rule 41(d) requires officers to give her a complete copy of the warrant at the outset of the search. Violations of Rule 41(d) do not usually demand suppression, however. Under Ninth Circuit law, "technical" violations of Rule 41(d) require suppression only if there was a "deliberate disregard of the rule" or if the defendant was prejudiced. *See United States v. Negrete–Gonzales,* 966 F.2d 1277, 1283 (9th Cir.1992). Suppression is justified here because the violation was deliberate. (We need not thus consider whether the violation was "technical" or "fundamental.") The agents failed to show Gantt the complete warrant even after she asked to see it. The government has provided no explanation or justification for the agents' failure. The government tries to argue Attachment A was unavailable because agents were using it to conduct the search, but in its opening brief the government admits the agents had "multiple copies" of the complete warrant on-site. Nothing in the record indicates that none of the copies could be spared to show Gantt or that the agents were unable to make an extra copy of the warrant in the 16 hours between the issuance of the warrant and its execution.

The government also claims the failure was not deliberate because "no previous case" has held that the warrant must be served on the subject of the search. We disagree. One of our recent cases held that under the Fourth Amendment, "[i]t is the government's duty to serve the search warrant on the suspect" in order to "inform the person subject to the search what items the officers executing the warrant can seize." [11] *See United States v. McGrew,* 122 F.3d 847, 850 (9th Cir.1997) (internal quotation marks omitted). The government might also consider the authorities it cited to us in its briefs. *See, e.g., Katz,* 389 U.S. at 355 n. 16, 88 S.Ct. 507; *Frisby,* 79 F.3d at 32 ("failure to furnish him with Attachment A prior to the search" was a violation of Rule 41(d)); *Charles,* 883 F.2d at 357 (same); *Bonner,* 808 F.2d at 869 (same).

Our Rule 41(d) jurisprudence requires suppression under these circumstances.

## VI. The "Good–Faith" Exception

 The government argues that even if a Rule 41(d) violation demanding suppression has occurred, the evidence should not be suppressed under the "good-faith" exception to the exclusionary rule. *See United States v. Leon,* 468 U.S. 897, 918, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The good-faith exception is not relevant here.

 The good-faith exception is applied when a magistrate erroneously issues a warrant but the officers involved are not expected to recognize the mistake. "If the executing officers act in good faith and in reasonable reliance upon a search warrant, evidence which is seized under a facially valid warrant which is later held invalid may be admissible." *United States v. Mi-*

11. Gantt relies heavily on *McGrew,* and the district court also relied on *McGrew's* interpretation of the Fourth Amendment to suppress the evidence. *McGrew* was decided on September 12, 1997, more than two months before the search of Gantt's apartment. Because Rule 41(d) requires suppression, we need not consider *McGrew's* interpretation of the Fourth Amendment. The Supreme Court recently declined to address "how detailed the notice of the seizure must be or when the notice must be given" under the Fourth and Fourteenth Amendments. *See City of West Covina v. Perkins,* 525 U.S. 234, 119 S.Ct. 678, 681, 142 L.Ed.2d 636 (1999).

*chaelian,* 803 F.2d 1042, 1047 (9th Cir. 1986) (providing examples of good-faith exceptions). The Supreme Court's goal in establishing the good-faith exception was to limit the exclusionary rule to situations where the illegal behavior of officers might be deterred. *See Leon,* 468 U.S. at 918, 104 S.Ct. 3405. The exclusionary rule is designed to deter police misconduct rather than legal errors of judges and magistrates. *See Illinois v. Krull,* 480 U.S. 340, 349–52, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987).

 The corollary of the above reasoning is that the exclusionary rule should not be applied where the violation is the fault of the officers. If there is no error on the part of the judiciary, the good-faith exception is inapplicable. Stated differently, the good-faith exception is not relevant where the violation lies in the *execution* of the warrant, not the validity of the warrant. Under such circumstances, suppression will presumably deter future violations and the exclusionary rule serves its purpose. In Gantt's case, the officers erred in the execution of a warrant, a subject wholly within their province. There is no allegation that the warrant was invalid or that the magistrate committed an error. The good-faith exception is not relevant.

### VII. Conclusion

The agents violated Rule 41(d)'s requirement that a warrant be served upon a person present at the search of her property at the time of execution absent some exigent circumstance. The violation was deliberate, so suppression is required under Rule 41(d) regardless of the dictates of the Fourth Amendment. Because errors in the execution of warrants are solely in the province of law enforcement agents, the good-faith exception has no applicability. The decision of the district court to suppress the evidence seized at Gantt's apartment is AFFIRMED.