# United States Court of Appeals
## For the First Circuit

---

No. 00-1406

UNITED STATES OF AMERICA,

Appellant,

v.

FERMIN HILARIO,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

---

Before

Selya, Circuit Judge,

Campbell, Senior Circuit Judge,

and Lipez, Circuit Judge.

---

Elizabeth D. Collery, Attorney, United States Dep't of Justice, with whom Guillermo Gil, United States Attorney, and Miguel A. Pereira, Assistant United States Attorney, were on brief, for appellant.
Maria H. Sandoval, by appointment of the court, for appellee.
G. Richard Strafer, with whom Barbara Bergman and G. Richard Strafer, P.A. were on brief, for National Ass'n of Criminal Defense Lawyers, amicus curiae.

July 17, 2000

**SELYA, Circuit Judge.** Fermín Hilario moved to dismiss an indictment brought against him, claiming that the protracted tenure of a court-appointed interim United States Attorney contravened applicable federal statutes, violated the Appointments Clause, offended the separation-of-powers principle and, in the end, rendered the indictment a nullity. The court below did not reach Hilario's constitutional claims but nonetheless granted his motion, ruling that the interim United States Attorney's extended service flouted congressional intent. The government appeals on an expedited basis. Concluding that the interim United States Attorney holds his office lawfully, we reverse.

## I. BACKGROUND

As a general rule, United States Attorneys are nominated by the President and, if confirmed by the Senate, serve four-year terms. See 28 U.S.C. § 541.[1] But Congress selected a different method for interim appointees:

> (a) Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant.

---

[1]If willing and able, a United States Attorney, upon the expiration of his four-year term, "shall continue to perform the duties of his office until his successor is appointed and qualifies." 28 U.S.C. § 541(b).

(b) The Attorney General shall not appoint as United States attorney a person to whose appointment by the President to that office the Senate refused to give advice and consent.

(c) A person appointed as United States attorney under this section may serve until the earlier of —

    (1) the qualification of a United States attorney for such district appointed by the President under section 541 of this title; or

    (2) the expiration of 120 days after appointment by the Attorney General under this section.

(d) If an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled. . . .

Id. § 546.

Thus, when the United States Attorney for the District of Puerto Rico resigned in May of 1993, Attorney General Janet Reno appointed an Assistant United States Attorney (AUSA), Charles Fitzwilliams, to fill the resulting vacancy. Because the President failed to name a replacement within 120 days, Fitzwilliams's appointment lapsed and the position once again became vacant. See id. § 546(c)(2). On September 9, 1993, the judges of the United States District Court for the District of Puerto Rico responded to the exigency and appointed a career Justice Department lawyer, Guillermo Gil, as interim United

-4-

States Attorney. See id. § 546(d). Although more than six years have passed, the President has yet to nominate a United States Attorney. Thus, Gil continues to serve in an interim capacity.

As the length of Gil's tenure increased, criminal defendants began to challenge his authority. Most of these challenges failed. See, e.g., United States v. Ruiz Rijo, 87 F. Supp. 2d 69, 70-72 (D.P.R. 2000); United States v. Santana, 83 F. Supp. 2d 224, 230-32 (D.P.R. 1999); United States v. Sosa, 78 F. Supp. 2d 20, 21 (D.P.R. 1999); United States v. Sotomayor Vazquez, 69 F. Supp. 2d 286, 296 (D.P.R. 1999); see also United States v. Torres-Rosa, 209 F.3d 4, 6 (1st Cir. 2000) (finding issue procedurally defaulted); United States v. Colon-Muñoz, 192 F.3d 210, 216 (1st Cir. 1999) (similar). Hilario broke the spell; he convinced a district judge to declare Gil's appointment unlawful and to grant his motion to dismiss a drug-trafficking indictment in a multi-defendant case. See United States v. Peralta-Ramirez, 83 F. Supp. 2d 263, 271 (D.P.R. 2000). This timely appeal followed.[2]

## II. ANALYSIS

---

[2]The other defendants in the case were not affected by the court's order. Predictably, however, they soon emulated Hilario's example (with identical results). Parallel appeals are now pending, but those appeals have been stayed pending our decision.

Jurisdictional issues have primacy of place in appellate review, see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 46 (1st Cir. 1999), so we first address Hilario's claim that we lack jurisdiction over the government's appeal. Next, because "[i]t has long been a basic tenet of the federal courts to eschew the decision of cases on constitutional grounds unless and until all other available avenues of resolution were exhausted," Aggarwal v. Ponce Sch. of Med., 745 F.2d 723, 726 (1st Cir. 1984), we discuss whether (as the district court concluded) Gil's appointment and continued service, singly or in combination, frustrate the statutory scheme. Because we find no statutory violation, we proceed to consider whether the Appointments Clause renders Gil's service unconstitutional. Concluding that it does not, we mull the most difficult question in the case: whether the appointment offends the separation-of-powers principle. Finally, we analyze whether the statute authorizing Gil's service is unconstitutional as applied to this situation. Throughout, our review is plenary. See United States v. Stokes, 124 F.3d 39, 42 (1st Cir. 1997); United States v. Nippon Paper Indus. Co., 109 F.3d 1, 3 (1st Cir. 1997).

## A.  Appellate Jurisdiction.

Hilario maintains that this court lacks jurisdiction to hear and determine the government's appeal because the notice of appeal was signed by unauthorized personnel (Gil and an AUSA in his office). We find this remonstrance unpersuasive.

Even assuming, for argument's sake, that the district court correctly divined Gil's incapacity to perform the functions of the office that he purports to hold — an assumption that, in the last analysis, proves untenable, see infra Part II(B)-(E) — Hilario's jurisdictional argument fails. There is no requirement that the United States Attorney personally sign a notice of appeal. See generally Fed. R. App. P. 3(c). Thus, the AUSA's signature was sufficient to validate the notice. We explain briefly.

AUSAs are themselves representatives of the government. Because they are appointed directly by the Attorney General, see 28 U.S.C. § 542, their ability to act does not hinge on the authority of the local United States Attorney, but derives from the Attorney General's plenary power over litigation to which the United States is a party, see id. § 516. To cinch matters, the decision to appeal in a criminal case is made not by the local United States Attorney but by the Solicitor General, see 28 C.F.R. § 0.20(b) — a person whose authority is not in doubt.

For these reasons, we hold that an infirmity in the appointment of the United States Attorney — even if one existed — would neither invalidate the notice of appeal nor strip this court of appellate jurisdiction. See United States v. Gantt, 194 F.3d 987, 998 (9th Cir. 1998).

### B. Statutory Construction.

The court below determined that, by holding office for so long a period, Gil had become the de facto United States Attorney without having to run the gauntlet prescribed in section 541(a). See Peralta-Ramirez, 83 F. Supp. 2d at 269. This rendered his continuing service unlawful, the court concluded, because Congress could not have intended to allow an interim appointee to serve as United States Attorney for upwards of six years — an interval that far exceeds the statutory term for a regular United States Attorney — without being nominated by the President and confirmed by the Senate. See id. at 271. We disagree with this conclusion.

The language of an unambiguous statute typically determines its meaning. See Freytag v. Commissioner, 501 U.S. 868, 873 (1991); Dickerson v. New Banner Inst., Inc., 460 U.S. 103, 110 (1983). That is, "if the plain language of the statute points unerringly in a single direction, an inquiring court

ordinarily should look no further."  López-Soto v. Hawayek, 175 F.3d 170, 172 (1st Cir. 1999).

The language of section 546(d) is direct and to the point.  In contrast to section 546(c)(2), which limits the Attorney General's interim appointment to a maximum of 120 days, section 546(d) specifies that the court's interim appointee shall "serve until the vacancy is filled."  There is no limit on the duration of this service (other than the nomination and confirmation of a regular United States Attorney).  The absence of any temporal limit strikes us as deliberate, rather than serendipitous, especially in view of the contrast between adjacent sections of a single statute.  See King v. St. Vincent's Hosp., 502 U.S. 215, 218-21 (1991).  This construction becomes irresistible when one considers that Congress did not give the President a deadline before which he must "appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district."  28 U.S.C. § 541(a).

These two pieces of the statutory scheme fit together tongue and groove.  In such circumstances, it is the court's role to give effect to plain meaning rather than to decide whether some other formulation might have been preferable as a matter of policy.  Consequently, we decline Hilario's invitation to rewrite the statutory scheme by inserting a temporal limit

into either of the two provisions we have mentioned. Instead, we read section 546(d) forthrightly to allow a judicial appointee to serve until the vacancy is filled, whenever that may be.

Of course, there are limits to the tyranny of plain language. See Church of the Holy Trinity v. United States, 143 U.S. 457, 459 (1892); see also Greenwood Trust Co. v. Massachusetts, 971 F.2d 818, 825 (1st Cir. 1992) (explaining that "the plain-meaning doctrine is not a pedagogical absolute"). Courts sometimes have been persuaded to soften the text of a statute if giving it literal effect would yield an absurd result, see, e.g., Green v. Bock Laundry Mach. Co., 490 U.S. 504, 510-11 (1989), or would countermand a clear expression of contrary legislative intent, see, e.g., Public Citizen v. United States Dep't of Justice, 491 U.S. 440, 455-65 (1989). Here, however, neither of these exceptions applies. The legislative history is uninformative, and reading the statute as written establishes a sensible framework that tends to prevent the passage of lengthy periods of time without a United States Attorney in place. Congress may well have determined that it would be worse for a district to be without a United States Attorney than for the district to have one who had not been nominated and confirmed in the ordinary course, no matter how

-10-

long the interim appointment lasted. The plausibility of this presumed intent, which comports with the statute's plain language, precludes reading the law to mean something other than what it says.

We add a coda. We recognize that it is counterintuitive for a temporary official to remain in office for so extended a period. If we were writing on a pristine page and wished to devise a template for the appointment of United States Attorneys, we might design it differently. But harboring such doubts "is not to find equivocation in the statute's silence, so as to render it susceptible to interpretive choice." King, 502 U.S. at 220. The unvarnished fact is that section 546(d) does not limit the duration of the service of court-appointed interim United States Attorneys. If Congress decides to proscribe the type of long-running interim appointment that has occurred here, it has the means to do so. In the absence of such a restriction, however, we are constrained to hold that Gil's lengthy tenure as the interim United States Attorney does not contradict the statutory scheme.

## C. The Appointments Clause.

We turn now to Hilario's constitutional arguments (which the district court did not have occasion to reach). We

-11-

deal first with the claim that section 546(d) offends the Appointments Clause.

The Appointments Clause states that:

> "[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law:  but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2.  In practice, then, the Clause makes nomination and confirmation the requisite appointment protocol for what have come to be known as "principal officers" of the United States but allows Congress to permit a limited class of officials to appoint "inferior officers" without the need for confirmation.  See Edmond v. United States, 520 U.S. 651, 659-60 (1997).

Congress has placed the power to appoint interim United States Attorneys in the Attorney General and in the district court, successively.  See 28 U.S.C. § 546.  Since the Appointments Clause permits such delegation only for inferior officers, the constitutionality of this section depends, in the first instance, on how United States Attorneys should be classified.

-12-

Hilario and the amicus assert that all United States Attorneys are principal officers and therefore must be nominated by the President and confirmed by the Senate. They add that, even if interim United States Attorneys are inferior officers, regular United States Attorneys are not — and the unusual length of Gil's service has transformed him into a de facto United States Attorney. The government favors a different taxonomy, urging us to categorize all United States Attorneys, howsoever appointed, as inferior officers.

Two recent Supreme Court cases offer a modicum of guidance on the distinction between principal and inferior officers. In Morrison v. Olson, 487 U.S. 654 (1988), the Court determined that an independent counsel was an inferior officer because her duties were limited, her performance of them was cabined by the policies of the Department of Justice, her jurisdiction was confined to particular matters, her tenure was restricted to the time it took to complete her assignment, and she held office subject to removal by the Attorney General (indicating that she was inferior to the Attorney General in rank and authority, even though she was not subordinate to him). See id. at 671-72. In so holding, the Court eschewed a precise formula for determining whether an officer is "inferior," declaring that it had no need to "decide exactly where the line

-13-

falls between [principal officers and inferior officers]."  Id. at 671.

In Edmond, the Court defined the term "inferior officer" as encompassing those "whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate."  520 U.S. at 663.  Given that independent counsels are not subject to such supervision, there is some tension between this definition and the Court's earlier holding in Morrison.[3] The Edmond Court did not overrule Morrison, however, but cited it as precedent.  See id. at 661.

The Ninth Circuit, when called upon to decide whether the judicial appointment of an interim United States Attorney passed muster under the Appointments Clause, managed to reconcile the two opinions.  The court noted that independent counsels are inferior despite limited supervision, and suggested

---

[3]Commentators have noted the awkwardness of the fit.  See, e.g., Steven G. Calabresi, The Structural Constitution and the Countermajoritarian Difficulty, 22 Harv. J.L. & Pub. Pol'y 3, 5 (1998) ("[T]he Court's 1997 decision in Edmond v. United States essentially displaced the faulty Appointments Clause analysis of Morrison v. Olson."); Nick Bravin, Note, Is Morrison v. Olson Still Good Law?  The Court's New Appointments Clause Jurisprudence, 98 Colum. L. Rev. 1103, 1117-20 (1998). Moreover, the Edmond definition — drafted by Justice Scalia — bears a striking similarity to his dissent in Morrison.  See Morrison, 487 U.S. at 719 (Scalia, J., dissenting) (hypothesizing that "'inferior' means 'subordinate'").

-14-

"that supervision by a superior officer is a sufficient but perhaps not a necessary condition to the status of inferior officers." Gantt, 194 F.3d at 999 n.6.

We find this approach persuasive.[4] Accordingly, we conclude that United States Attorneys are to be regarded as inferior officers if their work is "directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate," Edmond, 520 U.S. at 663, and, if not, might still be considered inferior officers if the nature of their work suggests sufficient limitations of responsibility and authority, see Morrison, 487 U.S. at 671-72. Measured against those benchmarks, United States Attorneys are inferior officers.

Congress has ceded to the Attorney General plenary authority over United States Attorneys. See 28 U.S.C. § 519; see also id. § 516 (reserving litigation on behalf of the United States to officers of the Department of Justice "under the direction of the Attorney General"). They are subject to much

---

[4]To be sure, this synthesis conflicts with certain comments expressed in non-majority opinions, see Edmond, 520 U.S. at 667 (Souter, J., concurring); Morrison, 487 U.S. at 722 (Scalia, J., dissenting) — but conflicts of this kind are to be expected; elsewise, there would have been no need for a Justice to write separately in the first place. For our part, we are content to leave the nuances laid out in separate opinions for the Justices.

closer supervision by superiors than, say, the judges of the Coast Guard Court of Criminal Appeals, whom the Edmond Court classified as inferior officers "by reason of the supervision [of others] over their work." 520 U.S. at 666. The Attorney General can remove a United States Attorney from participation in particular cases whenever she believes that it would be "in the interests of the United States" to do so. 28 U.S.C. § 518(b). Indeed, she is empowered to determine the location of a United States Attorney's offices, see id. § 545(b), to direct that he file reports, see id. § 547(5), to fix his salary, see id. § 548, to authorize his office expenses, see id. § 549, and to approve his staffing decisions, see id. § 550. Under so pervasive a supervisory regime, United States Attorneys plainly pass the Edmond test. Accord Gantt, 194 F.3d at 999-1000.

This is not to say that every indicator points in the same direction. For example, as Hilario and his amicus emphasize, the Attorney General does not have the authority to discharge a United States Attorney. But this fact, standing alone, does not tip the balance. Although the "power to remove officers . . . is a powerful tool for control," Edmond, 520 U.S. at 664, it is not a necessary adjunct to the exercise of control. In all events, the case law does not require "control" by a superior officer, but only direction and supervision. See

-16-

<u>id.</u> at 663.  Given the Attorney General's broad array of supervisory powers, the absence of the power of removal is not fatal to the government's position in this case.  <u>See</u> <u>Gantt</u>, 194 F.3d at 1000.

The amicus makes a further point.  Historically, the officers who held positions equivalent to that of the modern United States Attorney were quite independent.  Therefore, the amicus argues, those officers must not have been the kind that the Framers had in mind when they described "inferior officers." This argument misses the mark.  An officer's status as inferior or principal is not absolute, but relative to those around him. If Congress designs a government position in order to provide a supervisor for a group of officers who formerly were independent, those officers become inferior to the new officer. That is precisely what happened here.  As it stands now, the law places United States Attorneys under the direction and supervision of the Attorney General.  No more is exigible to show that United States Attorneys — and <u>a</u> <u>fortiori</u> interim United States Attorneys — are inferior officers.

### D.  <u>Separation of Powers</u>.

Because United States Attorneys are inferior officers, Congress as a theoretical matter can entrust their appointment to the President, the head of a department, or the courts of

law, without requiring Senate confirmation.  See U.S. Const. art. II, § 2, cl. 2; see also Ex parte Siebold, 100 U.S. 371, 397-98 (1879) (holding that the Constitution contains no flat prohibition against interbranch appointments).  We say "theoretical" because Congress's ability to choose among these three options is limited by the separation-of-powers principle. The Constitution establishes three coequal branches of government, and the doctrine of separated powers serves to eliminate arrangements that threaten to permit one branch either to aggrandize its power or to encroach on functions reserved for another branch.  See Mistretta v. United States, 488 U.S. 361, 381-82 (1989).  In this instance, Congress chose to place the appointing power vis-à-vis interim United States Attorneys partially in the judiciary.  See 28 U.S.C. § 546(d).  If authorizing judges to make such appointments is incongruous with the appointers' judicial duties or unduly interferes with the proper functioning of the Executive Branch, any appointments so made would be null and void.  See Morrison, 487 U.S. at 675-76; Siebold, 100 U.S. at 398.

Of course, section 546(d) cannot be said to violate the separation-of-powers principle simply because it requires two branches of government to interact.  "[W]hile our Constitution mandates that 'each of the three general departments of

-18-

government [must remain] entirely free from the control or coercive influence, direct or indirect, of either of the others,' the Framers did not require — and indeed rejected — the notion that the three Branches must be entirely separate and distinct."  Mistretta, 488 U.S. at 380 (quoting Humphrey's Executor v. United States, 295 U.S. 602, 629 (1935)); accord Morrison, 487 U.S. at 674-75 (using executive and legislative appointment of judges to illustrate that the Constitution permits interbranch appointments).  Rather, the district court's appointment power over interim United States Attorneys "is not unconstitutional unless Congress has vested in the [judges] powers that are more appropriately performed by the other Branches or that undermine the integrity of the Judiciary." Mistretta, 488 U.S. at 385.

The phrasing of this condition suggests the need for a bifurcated inquiry.  First, we must ask whether Congress, in vesting the power to appoint interim United States Attorneys in the district court, conferred upon the judges a power that usurped the prerogatives of another branch of government and, thus, "effected an unconstitutional accumulation of power within the Judicial Branch."  Id. at 383.  Second, we must ask whether the exercise of the power to appoint somehow impedes the proper functioning of the Judicial Branch.  See id.  We caution against

-19-

attempting to answer these questions in a vacuum. It is not for the courts to determine the best or most efficient repository for a power of appointment vis-à-vis inferior officers. The Constitution specifies that the members of Congress should delegate the appointment power "as they think proper." U.S. Const. art. II, § 2, cl. 2. It follows, then, that Congress's choice always deserves appreciable deference. See Siebold, 100 U.S. at 397-98 (explaining that, "as the Constitution stands, the selection of the appointing power, as between the functionaries named, is a matter resting in the discretion of Congress"). It is against this backdrop that we mount the requisite inquiry.

Hilario maintains that it is inappropriate for judges to appoint interim United States Attorneys because they serve within the Executive Branch and their efforts are devoted exclusively to the work of that Branch. The premise of this argument is questionable: while United States Attorneys are admittedly part of the Executive Branch, they also are officers of the court who serve the Judicial Branch. Cf. id. at 397 (describing hybrid role of marshals). In filling a vacancy in the office, judges ensure not only the enforcement of the laws but also an effective adversarial process.

-20-

More importantly, the judicial appointment of interim United States Attorneys does not impermissibly encroach on executive powers. In Morrison, the Court discerned no "inherent incongruity about a court having the power to appoint prosecutorial officers." 487 U.S. at 676. It added that "in light of judicial experience with prosecutors in criminal cases, it could be said that courts are especially well qualified to appoint prosecutors." Id. at 676 n.13. We find it difficult, if not impossible, to distinguish Morrison on this point.

What is more, our system of government rests on the assumption that officers can be independent of their appointers. See, e.g., Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 58-60 (1982); Humphrey's Executor, 295 U.S. at 625-26. Were this not so, all interbranch appointments would be barred. Here, the power to appoint is tempered in ways that ensure the appointee's independence. In this regard, we deem it especially significant that section 546(d) neither grants the judges of the district court authority to supervise or remove an interim United States Attorney whom they have appointed nor gives them power to determine (or even influence) how the appointee will enforce the laws. Cf. Morrison, 487 U.S. at 681 (emphasizing appointing judges' lack of supervisory authority). Under those circumstances, it is unreasonable to think that

-21-

merely making an interim appointment impermissibly entangles judges in the functioning of the Executive Branch.

This is particularly so because, insofar as interim United States Attorneys are concerned, the Executive Branch holds all the trump cards. For one thing, the President may override the judges' decision and remove an interim United States Attorney. See 28 U.S.C. § 541(c). For another thing, the President retains the right to nominate a United States Attorney whose confirmation by the Senate automatically will oust the interim appointee. See id. § 546(d). Even short of presidential involvement, the Attorney General can shunt the interim appointee to one side on any given investigation or case. See id. § 518. These features make it crystal clear that the district court's appointment of an interim United States Attorney is not an unconstitutional encroachment on executive authority.

The second screen for separated powers deals with whether the arrangement in question impedes the functioning of the appointing branch. Hilario tells us that section 546(d) fails this half of the test. In his view, asking a judge to choose a prosecutor forces the judge to "adopt a pro-government perspective which is ill-suited to his obligation to be neutral in the courtroom." In re Application of the President's Comm'n

on Organized Crime, 763 F.2d 1191, 1197 (11th Cir. 1985) (PCOOC).[5]

We are frank to admit that section 546(d) lacks some of the safeguards that courts have relied on in the past when they have determined that the impartiality of the Judicial Branch would not be affected by judges' performing interbranch assignments. See, e.g., Morrison, 487 U.S. at 683-84 (reasoning that judges' role in appointing an independent counsel did not threaten the impartial adjudication of cases because the judges in question had no authority to review the independent counsel's actions and because they were disqualified from participating in judicial proceedings involving the independent counsel); In re President's Comm'n on Organized Crime, 783 F.2d 370, 381 (3d Cir. 1986) (upholding judges' participation in a presidential commission on the basis that they could recuse themselves from

_____

[5]Hilario's argument derives from PCOOC, a case which held that judges' participation in the President's Commission on Organized Crime was unconstitutional because of the likelihood that it would affect either the judges' neutrality or litigants' perceptions of it. See PCOOC, 763 F.2d at 1197-98. The Third Circuit, however, subsequently reached a different result, noting that any bias could be dissipated by recusals in particular cases. See In re President's Comm'n on Organized Crime, 783 F.2d 370, 381 (3d Cir. 1986). And both of these decisions preceded the Supreme Court's ruling that judges' membership in the Sentencing Commission did not violate the separation-of-powers principle. See Mistretta, 488 U.S. at 412. In light of this history, we deem PCOOC's persuasive force uncertain.

-23-

related cases).  Furthermore, in this situation, unlike in Mistretta, 488 U.S. at 393-94 & n.20, Congress gave the nonjudicial power to the district court as a whole, not to an independent agency that happens to have judicial members.  These differences weigh in Hilario's favor, but there is no silver bullet here:  the decision that we must make — whether the judiciary's integrity is adversely affected because the district court has chosen to engage (as a court) in the task of selecting an interim United States Attorney, yet the judges hear cases brought by their appointee on a regular basis — depends on a wide array of facts and circumstances and how they fit together. We turn directly to that decision.

The Supreme Court has indicated in straightforward terms that having judges appoint prosecutors will not, in and of itself, impugn the judiciary's institutional integrity.  Indeed, the Morrison Court used the judicial appointment of interim United States Attorneys to illustrate that the task is not incompatible with judicial functions.  See Morrison, 487 U.S. at 676-77.  In a related vein, the Court noted "the longstanding judicial practice of appointing defense attorneys for individuals who are unable to afford representation . . . notwithstanding the possibility that the appointed attorney may appear in court before the judge who appointed him."  Id. at 677 n.14.

This history is directly relevant to our analysis. In context, the appointment of defense counsel for indigent criminal defendants would seem to be a necessary step for judges to take in order to provide for fair process. That rationale applies to the appointment of interim United States Attorneys with equal force. It is in keeping with preserving the institutional integrity of the judiciary that judges, faced with an indefinite vacancy in the office of United States Attorney, seek out a competent lawyer to represent the government. Cf. Young v. United States ex rel. Vuitton et Fils, 481 U.S. 787, 800-01 (1987) (holding that, when the Executive Branch defaults, a district court has the authority to appoint a prosecutor for contempt proceedings in order "to preserve respect for the judicial system itself"). Like judges' participation in the Sentencing Commission, judges' appointment of an interim United States Attorney assists the functioning of the court: at bottom, it assures the skillful processing of cases in which the United States is a party. See Mistretta, 488 U.S. at 407-08. And, moreover, just as judicial appointment of defense counsel has not fostered the belief that courts are biased in favor of either the lawyers whom they appoint or the criminal defendants whom those lawyers represent, so too judicial appointment of a prosecutor is unlikely to foster the belief that the court is biased in favor of the government.

In sum, we do not believe that section 546(d), by giving courts the option of naming an interim United States Attorney to avoid a vacancy, undermines public confidence in the disinterestedness of the Judicial Branch. The judiciary's integrity is not affected, and the method of appointment does not violate the doctrine of separated powers.

### E. The As-Applied Challenge.

We have one more bridge to cross. Hilario strives to persuade us that, due to the inordinate length of Gil's service as interim United States Attorney, section 546(d), even if not facially unconstitutional, is unconstitutional as applied here. We are not convinced.

Of course, an inferior officer can stand in for a principal officer. See, e.g., United States v. Eaton, 169 U.S. 331, 343 (1898). Should the stand-in remain so long in office that he became indistinguishable from the latter, an argument could be made that his continued service required nomination by the President and confirmation by the Senate. Here, however, no principal officers are involved. See supra Part II(C) (determining that United States Attorneys are inferior officers). Congress could therefore decide to delegate the appointment of United States Attorneys to district courts as a general matter. And if that is so, we are unable to see how the

-26-

duration of Gil's tenure affects the constitutionality of his appointment at all.  We hold that it does not.

**III.  CONCLUSION**

We need go no further.[6]  While we are at a loss to explain the failure to fill this important position, that is a political matter and, as such, falls outside our ken.  Confining our analysis — as we must — to the justiciable issues raised by the parties, we conclude for the reasons elucidated here that Gil's appointment and continued service as interim United States Attorney for the District of Puerto Rico comply with 28 U.S.C. § 546(d), the Appointments Clause, and the doctrine of separated powers.  Consequently, the indictment against Hilario was duly authorized.  It should not have been dismissed.

**Reversed.**

---

[6]The government argues, with considerable force, that even if Gil does not lawfully hold office, the district court nonetheless erred in dismissing the indictment.  For obvious reasons, we need not reach that argument.