# United States Court of Appeals
## For the First Circuit

---

No. 99-1465

UNITED STATES,

Appellee,

v.

RICARDO PADRÓ BURGOS, A/K/A RICKY PADRO,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

---

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Lipez, Circuit Judge.

---

Ignacio Fernández-de Lahongrais for appellant.

Jacabed Rodríguez-Coss, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, was on brief for appellee.

February 6, 2001

**BOWNES, <u>Senior Circuit Judge</u>.** Defendant-appellant Ricardo Padro Burgos was found guilty by a jury of being part of a conspiracy to distribute in excess of five kilograms of cocaine, in excess of five kilograms of cocaine base, and in excess of one hundred kilograms of marijuana in violation of 21 U.S.C. § 846 (count II). He was also found guilty of violating 18 U.S.C. § 924(c)(1) by using firearms during and in relation to drug trafficking, and of aiding and abetting the commission of both offenses under 18 U.S.C. § 2 (count III).

Defendant raises three issues on appeal: (1) the improper admission of "unfairly prejudicial" statements purportedly made by coconspirators;" (2) sentencing errors; and (3) the district court's lack of jurisdiction to hear the case.[1]

**I.**

Defendant Padro Burgos was a member of a gang whose main business was selling cocaine, heroin, and marijuana. Padro

---

[1]The third issue involves the constitutionality of the appointment of an interim United States Attorney in Puerto Rico. We recently addressed that issue and upheld the appointment. <u>United States</u> v. <u>Hilario</u>, 218 F.3d 19 (1st Cir. 2000). Therefore, this issue will not be discussed further.

Burgos and eight others were tried together, and all were found guilty as charged. We consolidated the appeals. Seven of the defendants, including Padro Burgos, argued orally on September 14, 2000.

The gang to which Padro Burgos belonged controlled two drug points from which it sold its wares. One of the drug points was located in a public housing project in San Juan, Puerto Rico. Another drug point, which mainly sold heroin, was located within the Hogar Crea detention and drug rehabilitation facility in Saint Just at Trujillo Alto, Puerto Rico. Padro Burgos was in charge of the drug point at the Hogar Crea facility and most of his drug-related activity took place there.

## II.

We state the issues as phrased by the defendant.

1. Was appellant Padro deprived of a fair trial by the allowance of unfairly prejudicial statements purportedly made by coconspirators, despite the fact that no independent evidence, other than the statements themselves, showed by a preponderance of the evidence that a conspiracy existed between the declarant and the defendant?

A salient exception to the hearsay rule, Fed. R. Evid. 801(c), is that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. Fed. R. Evid. 801(d)(2)(E). In <u>United States</u> v.

Sepulveda, 15 F.3d 1161 (1st Cir. 1993), we explained how the exception works:

> To invoke the exception, a party who wants to introduce a particular statement must show by a preponderance of the evidence that a conspiracy embracing both the declarant and the defendant existed, and that the declarant uttered the statement during and in furtherance of the conspiracy. The party at whom the evidence is aimed must object to the statement when it is offered; and, if the district court accepts the evidence de bene, must then ask the court at the close of all the relevant evidence to strike the statement, i.e., to consider whether the proponent fulfilled the requisite foundational requirements by a preponderance of the evidence.

Id. at 1180 (internal citations omitted).

The last sentence of Rule 801(d)(2)(E) states in pertinent part:

> The contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

See also Sepulveda, 15 F.3d at 1182 ("In other words, to satisfy the weight-of-the-evidence criteria for that hearsay exception, there must be some proof aliunde."). In Sepulveda, we concluded it was error to admit hearsay statements by two declarants because "the government developed no independent evidence" of

what the "status" of the declarants "might have been vis-a-vis the charged conspiracy."  Id.

We now turn to the case before us.  After the government's chief witness, William Acevedo Rodriguez, testified at length about the scope and activities of his coconspirators and identified the defendant as a member of the conspiracy, the trial judge ruled:

> With the evidence that the court has heard already, we find, for purposes of this ruling under 104 and subject to a final ruling at the end of all of the evidence, that the government has proven there was a conspiracy in existence as stated in the indictment.  That the declarant was a member of this conspiracy.  That the defendants against whom the statements are offered were members of the conspiracy.  These statements were made in furtherance of that conspiracy. The statement was made during the course of this conspiracy.

No objection was made by Padro Burgos or any other defendant; hence we review the ruling for plain error.  See Sepulveda, 15 F.3d at 1180.

There can be no doubt that the testimony of the principal witness for the government, Acevedo, fell squarely within the hearsay exception set forth in Fed. R. Evid. 801(a)(2)(E).  He identified each of the defendants, including Padro Burgos, and described in detail their activities as part of the conspiracy.  Acevedo described Padro Burgos's role in the

conspiracy as being in charge of the drug point at the Hogar Crea facility. Acevedo also identified Padro Burgos as being part of a group that executed two members of a rival gang that had temporarily wrested control of the Hogar Crea drug point from the members of the conspiracy. The district court did not commit error, plain or otherwise, in admitting Acevedo's testimony under the coconspirator exception to the hearsay rule.

We next turn to the second step in our analysis: whether there was sufficient independent non-hearsay evidence to support Acevedo's testimony. As we noted in United States v. Portela, 167 F.3d 687, 703 (1st Cir. 1999), the extent of such corroborating evidence is an open question because in Sepulveda, 15 F.3d at 1181-82, there was no corroborating evidence at all. And as in Portela, 167 F.3d at 703, we find there is sufficient independent non-hearsay testimony to make it unnecessary to determine precisely how much corroborating evidence is needed to meet the requirements of Sepulveda.

The independent non-hearsay evidence came from Ramon Santiago Cascanzo, who testified as follows: Santiago was an inmate at the Hogar Crea facility in May of 1994. He had been transferred there from the jail at Guyamo where he had been incarcerated for murder, which he claimed was committed in self-defense. Santiago identified Padro Burgos and testified that he

was the leader of the inmates at the Hogar Crea facility. As the leader, Padro Burgos selected the disciplinary committee, which disciplined inmates who had broken any of the rules set by the inmate committee governing behavior at the Hogar Crea facility. One of the rules prohibited the possession of weapons.

Santiago testified that at 7:30 on the morning of May 16, 1994, "a few of the guys met" and they "ousted Acevedo" (the government witness, a/k/a Pito Metra) from the Hogar Crea drug point. Santiago and his three friends, Angel, Reynaldo, and Melvin, were present when the ousting took place.

Later in the morning, Padro Burgos came looking for Santiago and his three friends, because the day before some money had been stolen by Acevedo and Javier Franky Ortiz (a co-defendant). Stealing money was prohibited under the rules set by the disciplinary committee.

At the insistence of Padro Burgos and two other identified members of the conspiracy, Santiago and his three friends went to a hut on the grounds of or near the Hogar Crea facility. At the hut, Padro Burgos asked Santiago and his three friends whether they had weapons. Although Santiago did have a handgun, which he had obtained at the Guyamo jail, he denied

having a weapon, as did each of his three friends.[2]  When Reynaldo stood up and denied having a weapon, Carlos Peca, one of the other members of the conspiracy, shot him in the face. Santiago started running and was shot eight times.  He fell down, looked back and identified those shooting at him:  Padro Burgos, "El Vijeo, Carlos Javier, and the minor."  All of those named are alleged to be members of the conspiracy.  A diagram of the hut area was entered into evidence.  Santiago marked the position of Padro Burgos and the other shooters on the diagram. Santiago also testified that Padro Burgos sold heroin regularly at the Hogar Crea facility and decided who else could sell drugs there.

This independent non-hearsay corroborating testimony was more than sufficient to meet the "aliunde" requirement of the last sentence of Fed. R. Evid. 801(d)(2)(E).  Hence, there was no error in admitting Acevedo's testimony against Padro Burgos.

    2.  Did the sentencing court err in assessing a base offense level of 43 pursuant to an offense involving 30 kilograms or more of heroin and the killing of a victim under circumstances that would constitute murder under 18 U.S.C. § 1111?

---

[2]The gun was marked in evidence.

On appeal, Padro Burgos challenges the district court's imposition of a life sentence following his conviction. We review the district court's application of a particular sentencing guideline de novo, but review the factual findings underlying that application for clear error. United States v. Peterson, 233 F.3d 101, 111 (1st Cir. 2000).

At the inception of Padro Burgos's sentencing hearing, the district court stated that the presentence report "is made a part of the record of this case" and "shall form the finding of fact of this court for purposes of this hearing." The court then explained its application of the sentencing guidelines:

> On July 15, 1998, the defendant Ricardo Padro Burgos was found guilty by jury trial of counts 2 and 3 of the indictment in this case charging violations of Title 21 U.S. Code section 846 and 18 U.S. Code section [924(c)(1)]. That is a conspiracy to distribute heroin and cocaine and use of a firearm in relation to a crime of violence and aiding and abetting. The guideline for a 21 U.S. Code section 846 offense is found at section 2D1.1 of the guidelines. That section provides that offenses involving 30 kilos or more of heroin, 150 kilos or more of cocaine, 1.5 kilos or more of cocaine base and 100 kilos or more of marijuana have a base offense level of 38. However, as victims were killed under the circumstances that would constitute murder under 18 U.S. Code section 1111 and the killings took place within the territorial jurisdiction of the United States the provisions of Section 2D1.1(d)(1) require the application of guideline section 2A1.1 dealing with first degree murder. As such the appropriate

-9-

offense level is 43. Guideline provisions preclude application of guideline adjustments to offenses under 18 U.S. Code section 924(c)(1) as charged in Count 3. [The] statute mandates the imposition of a fixed consecutive imprisonment term in accordance with section 2K2.4(a). Based on a total offense level of 43 and a criminal history category of 6, the guideline imprisonment term in this particular case is life with a fine range of $25,000 to four million plus a supervised release term of three to five years.

Accordingly, the court sentenced Padro Burgos to consecutive terms of life imprisonment on Count 2, the conspiracy offense, and five years on Count 3, the firearm offense. Padro Burgos made no objection at the hearing, so we review his claim for plain error. See United States v. Torres-Rosa, 209 F.3d 4, 8 (1st Cir. 2000).

Padro Burgos first argues that the district court erred because it made no specific findings as to the quantity of drugs for which he was responsible, but rather simply adopted the presentence report findings, which were themselves devoid of detail. The court based the offense level not on the quantity of drugs, however, but on the fact that victims were killed, bringing the sentence within the ambit of U.S.S.G. § 2D1.1(d)(1). That section provides: "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or

-10-

maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder) [setting forth a base offense level of 43]." Section 2D1.1(d)(1) does not involve consideration of the quantity of drugs involved. Thus, any error in the district court's failure to make particularized findings as to the drug quantity is harmless.

Padro Burgos next takes issue with the application of § 2D1.1(d)(1), maintaining that his sentence was driven by the murders, which were not separately charged, rather than the charged offense of drug conspiracy. He attacks the lack of "proportionality" between the sentence he "might have received" based on drug quantity, § 2D1.1(a), and the life sentence he received under § 2D1.1(d)(1). As this court discussed at length in United States v. Lombard, 72 F.3d 170, 176 (1st Cir. 1995), life sentence enhancements constituting "the tail which wags the dog of the substantive offense" may raise serious due process concerns. Id., quoting McMillan v. Pennsylvania, 477 U.S. 79, 88 (1986). There is no reversible error in this case, however.

As Padro Burgos acknowledges, his sentencing enhancement under § 2D1.1(d)(1) needs only be based on facts

proved by a preponderance of the evidence.[3]  See id. at 176. Significantly, Padro Burgos does not contest the district court's finding that he was, in fact, responsible for murders meeting the criteria of § 2D1.1(d)(1).  His complaint that the murders were not proven beyond a reasonable doubt thus is without merit.[4]

Padro Burgos also suggests that the district court erred in failing to give a downward departure to remedy the "disproportion" between the quantity-based sentence he would have received under U.S.S.G. § 2D1.1(a) and the enhanced sentence he received under § 2D1.1(d)(1).  He argues that the district court, like the court in Lombard, 72 F.3d at 172, was unaware of its authority to award a downward departure under U.S.S.G. § 5K2.0. This analogy is unavailing, however; there is nothing in the sentencing hearing to indicate that the court

---

[3]After initial briefing in this case, Padro Burgos sought to supplement his brief to discuss United States v. Apprendi, 120 S. Ct. 2358 (2000), in which the Supreme Court held that certain facts that increase penalties beyond the applicable statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.  We denied that motion without prejudice to his right to raise Apprendi by way of an application for collateral relief in the event his direct appeal failed.

[4]Nor does he provide any suggestions as to what sentence he "might have received" under § 2D1.1(a) for purposes of comparison.  Although he states that "the controlled substances for which [he] should be held accountable will undoubtably be significantly lower than the original BOL of 38," he does not offer argument as to what drug quantity would be accurate.

believed it was unable to adjust the guideline sentence downward.[5] See id. at 172. Padro Burgos never requested such a departure, and the court did not address the subject.

Furthermore, while the district court in Lombard was "greatly troubled" by the enhancement of the defendant's firearm offense based on a related murder, the district court in this case showed no reluctance or ambivalence about imposing a life sentence. To the contrary, it stated:

> This court wants to send a clear message to reflect the seriousness of the offense and to promote respect for the law. The Court finds that a sentence of life imprisonment will serve both as a punitive factor against this defendant and as a deterring factor to those in our communities that lack respect for life and for the laws that govern society.

In sum, there is no reason to believe that the district court was unaware of its ability to depart downward, or that it would have preferred such a course.[6]

---

[5]It is true that the district court stated, "Guideline provisions preclude application of guideline adjustments to offenses under 18 U.S. Code section 924(c)(1) as charged in Count 3." To the extent that this statement indicates that the court believed it did not have the discretion to adjust downward, however, it pertains only to the firearm offense, not to the drug conspiracy offense for which Padro Burgos received a life sentence.

[6]Indeed, a life sentence was within the guideline range even without the enhancement under § 2D1.1(d)(1). With a base offense level of 38 (as initially calculated by the district court based on drug quantity) and a criminal history category of

The conviction and sentence are **<u>affirmed</u>**.

---

VI, the applicable sentencing range would have been 360 months to life imprisonment.