UNITED STATES of America,
Plaintiff,

v.

Toby MARTINEZ, Raul Parra, Manny Aragon, Sandra Martinez, a/k/a/ "Sandra Mata," and Michael Murphy, Defendants.

No. CR–07–615 WJ.

United States District Court,
D. New Mexico.

May 9, 2008.

Robert J. Gorence, Gorence & Oliveros PC, Ray Twohig, Timothy M. Padilla, J. Miles Hanisee, Mark Fine, Fine Law Firm, Robert Jason Bowles, Bowles & Crow, Albuquerque, NM, for Defendants.

Chris Lackmann, Jonathon M. Gerson, Paula G. Burnett, U.S. Attorney's Office, Albuquerque, NM, for Plaintiff.

*MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS INDICTMENT WITHOUT PREJUDICE ON BASIS THAT CURRENT UNITED STATES ATTORNEY HAS BEEN UNCONSTITUTIONALLY APPOINTED*

WILLIAM P. JOHNSON, District Judge.

THIS MATTER comes before the Court on Defendant Raul Parra's ("Parra's") Motion to Dismiss Indictment without Prejudice on the Basis that the Current United States Attorney ("U.S. Attorney") has been Unconstitutionally Appointed, filed January 30, 2008 **(Doc. 199)**. Having considered the parties' legal memoranda, oral arguments of counsel and the applicable law, I find and conclude that the appointment of the current U.S. Attorney was constitutionally sound. Accordingly, Parra's motion is denied.

## FACTUAL BACKGROUND

David C. Iglesias, former U.S. Attorney for the District of New Mexico, left office effective February 28, 2007. Immediately following Mr. Iglesia's departure, First Assistant U.S. Attorney Larry Gomez became Acting U.S. Attorney pursuant to the Vacancies Reform Act, 5 U.S.C. § 3345(A)(1). On September 26, 2007, Acting Attorney General Peter Keisler appointed Mr. Gomez as U.S. Attorney pursuant to 28 U.S.C. § 546(a).

By statute, Mr. Gomez's appointment as U.S. Attorney by the Attorney General could last for only 120 days. 28 U.S.C. § 546(c)(2). Thus, on January 25, 2008, the United States District Court for the District of New Mexico ("the District Court") exercised its discretion pursuant to 28 U.S.C. § 546(d) and appointed Gregory J. Fouratt as the interim U.S. Attorney for the District of New Mexico.

Approximately ten months earlier on March 29, 2007, Parra was indicted by the Grand Jury along with three other defendants in a 26 count indictment containing various counts relating to allegations of corruption involving the construction of the State of New Mexico Metropolitan Courthouse in downtown Albuquerque.[1] Parra raises no challenge to the validity of the indictment against him when Larry Gomez was U.S. Attorney nor does Parra challenge the legitimacy of Larry Gomez's tenure as U.S. Attorney. Parra simply asserts that he is now being prosecuted by a U.S. Attorney whose appointment by the District Court under 28 U.S.C. § 546(d) violates the Appointments Clause of the United States Constitution and the constitutional doctrine of separation of powers. As a remedy for the alleged constitutional violation, Parra seeks an order of dismissal of the indictment without prejudice.

## DISCUSSION

### I. The Relevant Statute

Congress has vested the appointments of U.S. Attorneys in the President of the United States with advice and consent of

---

1. The present indictment has been superceded three times and there are now five Defendants and twenty-eight counts.

the Senate. 28 U.S.C. § 541(a).[2] The statute Parra challenges, § 546(d), provides for a process to fill the position of U.S. Attorney when there is a vacancy and the position cannot be filled by someone appointed by the President with the advice and consent of the Senate. Section 546 reads in its entirety:

(a) Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant.

(b) The Attorney General shall not appoint as United States attorney a person to whose appointment by the President to that office the Senate refused to give advice and consent.

(c) A person appointed as United States attorney under this section may serve until the earlier of—

(1) the qualification of a United States attorney for such district appointed by the President under section 541 of this title; or

(2) the expiration of 120 days after appointment by the Attorney General under this section.

(d) If an appointment expires under subsection (c)(2) of this section, the district court for such district may appoint a United States attorney to serve until the vacancy is filled. The order of appointment by the court shall be filed with the clerk of the court.

Section 546(a) delegates the appointment power to the Attorney General when there is a U.S. Attorney vacancy; however, the Attorney General's appointment power is limited in candidacy and scope. The Attorney General cannot appoint an individual who was previously denied confirmation by the Senate. Further, an Attorney General's appointment lasts only until appointment of a U.S. Attorney by the President, but the Attorney General's appointment cannot exceed 120 days. § 546(c). If the Attorney General's appointment expires under the 120–day rule and no U.S. Attorney is appointed by the President with advice and consent of the Senate, the United States District Court in the district where there is a U.S. Attorney vacancy has the power to appoint an interim U.S. Attorney until a proper appointment by the President, with Senate confirmation, can be effected. § 546(d).

Congress has vested the federal judiciary with a role in interim appointments of U.S. Attorneys since 1863.[3] The only break in the judiciary's appointment power since the Civil War came in 2006, with the passage of the USA PATRIOT Improvement and Reauthorization Act of 2005, Pub.L.No. 109–177, 120 Stat. 246. That year Congress struck the 120–day limitation of Section 546(c)(2) and struck Section 546(d) altogether. In 2007, however, Congress quickly reversed course and restored both the 120–day limitation upon the Attorney General's authority and the judiciary's power to make appointments of interim United States Attorneys under 546(d). *See* Preserving United States Attorney In-

---

2. All relevant statutory provisions are contained in Title 28, United States Code, unless specified otherwise.

3. Congress first authorized the judicial appointment of interim United States Attorneys in 1863, vesting the Circuit Justice with power to fill a vacancy "until an appointment shall be made by the President, and the appointee has duly qualified, and no longer."

Act to Give Greater Efficiency to the Judicial System of the United States of March 3, 1863, 12 Stat. 768. In 1898, Congress transferred this authority to the district courts because "the circuit justice is not always to be found in the circuit and time is wasted in ascertaining his whereabouts." H.R.Rep. No. 1317, 55th Cong., 2d Sess. 1 (1898).

dependence Act of 1007, P.L. 110–34 (June 14, 2007).

## II. Whether § 546 Violates the Appointments Clause

The Appointments Clause of Article II of the Constitution reads as follows:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Minsters and Consuls, Judges of the Supreme Court, and all other officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: *but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.*

U.S. Const., Art. II, § 2, cl. 2 (emphasis added).

█ The Appointments Clause vests the President with the exclusive power to select principal officers with the advice and consent of the Senate, but authorizes Congress to "vest the Appointment of ... inferior Officers ... in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const., Art. II, § 2. The Office of U.S. Attorney is an "inferior office" within the meaning of the Appointments Clause,[4] a fact not disputed by Parra. *See* Def't's Mot. at 7, 8. Thus, the express, unlimited language of the Appointments Clause authorizes Congress to vest in Courts the authority to appoint inferior officers such as U.S. Attorneys. Notwithstanding this broad language regarding appointment of inferior officers, Congress' power to provide for interbranch appointments of "inferior officers" is not unlimited. *Morrison v. Olson,* 487 U.S. 654, 675–76, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988). The Supreme Court has held that Congressional action to vest the appointment power in the Courts would be improper if there was some "incongruity" between the functions normally performed by the Courts and the performance of the duty to appoint. *Id.* (citing *Ex parte Siebold,* 100 U.S. 371, 398, 25 L.Ed. 717 (1880)).

In *Morrison,* independent counsel was appointed by a "special division" of Article III Judges, pursuant to a statutory provision in the Ethics and Government Reform Act to investigate former governmental officials. These former officials challenged the authority of the court appointed independent counsel to compel their testimony before a grand jury. The Supreme Court determined that the independent counsel was an "inferior officer" and held that the appointment of the independent counsel by the "special division" of judges did not run afoul of the Appointments Clause limitation on "incongruous" interbranch appointments. *Id.* at 676, 108 S.Ct. 2597. In upholding the constitutionality of the court appointed independent counsel, the *Morrison* Court cited various examples of courts appointing lawyers to various positions. The most notable example for purposes of the instant case is the citation to § 546(d) and the reference to *United States v. Solomon,* 216 F.Supp. 835 (S.D.N.Y.1963), a district court opinion upholding the constitutionality of a criminal defendant's information signed by an interim U.S. Attorney

---

4. *U.S. v. Hilario,* 218 F.3d 19, 25 (1st Cir. 2000); *U.S. v. Gantt,* 194 F.3d 987, 999 (9th Cir.1999). *See also Myers v. United States,* 272 U.S. 52, 159, 47 S.Ct. 21, 71 L.Ed. 160 (1926) (stating that *Parsons v. United States,* 167 U.S. 324, 17 S.Ct. 880, 42 L.Ed. 185 (1895), "conclusively establishe[d]" that a "United States Attorney [was] an inferior officer").

appointed by the judges of the Southern District of New York.

■ Parra urges this Court to follow the rationale of Justice Scalia's dissent in *Morrison*, 487 U.S. at 710, 108 S.Ct. 2597, the only dissent in a 7 to 1 decision.[5] As a preliminary matter, the District Court as an inferior court is bound to follow the applicable precedent of the Supreme Court. *United States v. Hatter*, 532 U.S. 557, 567, 121 S.Ct. 1782, 149 L.Ed.2d 820 (2001). Accordingly, the precedent for which *Morrison* stands and which must be relied upon is Chief Justice Renquist's majority opinion, not Justice Scalia's dissent.

Some nine years after he dissented in *Morrison*, Justice Scalia wrote the majority opinion in *Edmond v. United States*, 520 U.S. 651, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997), a case involving a constitutional challenge to the appointment of the judges to the Coast Guard Court of Criminal Appeals by the Secretary of the Transportation pursuant to Congressional authorization. The *Edmond* Court defined an "inferior" officer as one "... whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Id.* at 663, 117 S.Ct. 1573. The Court, relying on the Appointments Clause and the express authority of Congress to vest the appointment of "inferior officers", held that the Congressional grant of authority to the Secretary of the Transportation to appoint judges of the Coast Guard Court of Crimi-

nal Appeals did not violate the Appointments Clause. *Id.* at 666, 117 S.Ct. 1573.

The Supreme Court's opinions in *Morrison* and *Edmond* are seminal authorities which have guided lower federal courts including the First and Ninth Circuit Courts of Appeals in upholding the constitutionality of interim court appointed U.S. Attorneys and those courts have all reached the same conclusion that an interim U.S. Attorney appointed by a court pursuant to § 546(d) does not violate the Appointments Clause. *See e.g.*, *U.S. v. Hilario*, 218 F.3d 19 (1st Cir.2000); *U.S. v. Gantt*, 194 F.3d 987 (9th Cir.1999); *U.S. v. Baker*, 504 F.Supp.2d 402 (E.D.Ark.2007): *U.S. v. Dehghani*, No. 06–0168–01, 2007 WL 1796219 (W.D.Mo.2007).[6]

Based on the Supreme Court's decisions in the *Morrison* and *Edmond* cases, the decisions of the First and Ninth Circuits and those decisions of district courts specifically addressing the validity of court appointed interim U.S. Attorneys, this Court concludes that the appointment of Mr. Fouratt as interim U.S. Attorney did not run afoul of the Appointments Clause.

## III. Whether § 546 Violates Separation of Powers Doctrine

■ The separation of powers doctrine maintains that each of the three departments of government are "entirely free from the control or coercive influence, direct or indirect, of either of the others ...." *Humphrey's Ex'r v. U.S.*, 295 U.S. 602, 629, 55 S.Ct. 869, 79 L.Ed. 1611 (1935). The functions appropriate to each

---

**5.** Chief Justice Rehnquist wrote the opinion of the Court in *Morrison* in which six other justices joined. Justice Kennedy took no part in the decision.

**6.** As of the date of the filing of this Memorandum Opinion and Order, at least three other District Judges in the District of New Mexico have overruled constitutional challenges to Mr. Fouratt's appointment as interim U.S.

Attorney pursuant to 28 U.S.C. § 546(d). *See U.S. v. Tafoya*, 541 F.Supp.2d 1181 (D.N.M. 2008) (Doc. 130); *U.S. v. Baldwin*, 541 F.Supp.2d 1184 (D.N.M.2008) (Doc. 31); *U.S. v. Rose et al.*, 537 F.Supp.2d 1172 (D.N.M. 2008) (Doc. 62); and *USA v. Moreau*, Crim. No. 07–388 JB (D.N.M. Apr. 3, 2008) (Doc. 219).

of the three branches of government require that "the lines which separate and divide these departments shall be broadly and clearly defined." *Kilbourn v. Thompson,* 103 U.S. 168, 190, 26 L.Ed. 377 (1880). "[W]hile our Constitution mandates that each of the three general departments of government [must remain] entirely free from the control or coercion influence, direct or indirect, of either of the others, the Framers did not require—and indeed rejected—the notion that the three branches must be entirely separate and distinct." *Mistretta v. United States,* 488 U.S. 361, 380, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) quoting *Humphrey's Executor,* 295 U.S. at 629, 55 S.Ct. 869.

Clearly executive power must be and is vested in the President of the United States. U.S. Const., Art. II, 1, cl. 1. Thus, the question is whether § 546(d) violates the separation of powers doctrine by impermissibly interfering with the President's exercise of executive power, and reduces the President's ability to control the prosecutorial powers wielded by the office of U.S. Attorney. Stated another way, "... the district court's appointment power over interim United States Attorneys 'is not unconstitutional unless congress has vested in the [judges] powers that are more appropriately performed by the other Branches or that undermine the integrity of the Judiciary.'" *Hilario,* 218 F.3d at 26–27 quoting *Mistretta,* 488 U.S. at 385, 109 S.Ct. 647.

■ The *Hilario* Court appropriately determined that whether § 546(d) violates separation of powers calls for a bifurcated inquiry.

> First, we must ask whether Congress, in vesting the power to appoint interim United States Attorneys in the district court, conferred upon the judges a power that usurped the prerogatives of another branch of government and,

thus, "effected an unconstitutional accumulation of power within the Judicial Branch." *Mistretta,* 488 U.S. at 383, 109 S.Ct. 647. Second, we must ask whether the exercise of the power to appoint somehow impedes the proper functioning of the Judicial Branch. *See id.*

*Hilario,* 218 F.3d at 27.

In analyzing the first prong of the *Hilario* Court's bifurcated inquiry, it is abundantly clear that the District Court's interim appointment of Mr. Fouratt as U.S. Attorney is not an unconstitutional encroachment on the executive authority of the Executive Branch. First, the President may override an interim judicial appointment of a US. Attorney. *See* § 541(c). Second, the President retains the unrestricted power to nominate a U.S. Attorney whose confirmation by the Senate automatically removes a court appointed interim U.S. Attorney. *See* § 546(d). Third, the Attorney General has the power to divest an interim U.S. Attorney of authority to act in any given case or cases under § 518. Finally, the Attorney General "... shall direct all United States attorneys, assistant United States attorneys, and special attorneys ... in the discharge of their respective duties." § 519. "[I]nsofar as interim United States Attorneys are concerned, the Executive Branch holds all the trump cards." *Hilario,* 218 F.3d at 27. Accordingly, the District Court's appointment of Mr. Fouratt did not impermissibly encroach upon the prerogatives of the Executive Branch.

The second area of inquiry requires consideration of whether the District Court's appointment of Mr. Fouratt impedes the proper functioning of the Judicial Branch. The essence of the argument advanced by Parra is that the District Court's appointment of Mr. Fouratt places the District Court in the position of adopting a pro-

prosecution, pro-Government perspective which is ill-suited and counter to the District Court's role of and obligation to be a neutral decision maker in the courtroom.

In answering the question of whether a court appointed interim U.S. Attorney threatens the independence of the judicial branch, I look to guidance from the Supreme Court and conclude that a district court's appointment of an interim U.S. Attorney pursuant to § 546(d) does not impugn the judiciary's institutional integrity. Indeed, the *Morrison* Court cited to judicial appointment of interim U.S. Attorneys as a way to demonstrate that such an appointment is not incompatible with the functions of the judiciary. *See Morrison,* 487 U.S. at 676–77, 108 S.Ct. 2597. Moreover, the *Morrison* Court also noted "... the longstanding judicial practice of appointing defense attorneys for individuals who are unable to afford representation ... notwithstanding the possibility that the appointed attorney may appear in court before the judge who appointed him." *Id.* at 677, n. 4, 108 S.Ct. 2597; *see also Hilario,* 218 F.3d at 28–29. Furthermore, federal district judges routinely not only appoint attorneys to represent defendants in criminal cases, but also they are routinely called upon in the context of ex-parte proceedings under the Criminal Justice Act to approve fees for lawyers, fees for the hiring of investigators and expert witnesses and they hear, on an ex-parte basis, individual defendants complaints against their court appointed attorneys. *See generally* 18 U.S.C. § 3006A. I am at a complete loss to understand how the appointment of an interim U.S. Attorney under § 546(d) any more impugns the impartial integrity of the judiciary than the judicial appointment of a defense attorney to ensure that a defendant is adequately represented by counsel and that his rights to due process are adequately protected. Accordingly, I conclude that the District

Court's appointment of Mr. Fouratt did not impede the proper functioning of the judiciary.

### CONCLUSION

The appointment of Gregory J. Fouratt as interim U.S. Attorney by the United States District Court for the District of New Mexico neither violated the Appointment Clause of the United States Constitution nor the constitutional doctrine of Separation of Powers. The appointment of Mr. Fouratt as interim U.S. Attorney being constitutionally sound, Defendant Parra's Motion to Dismiss Indictment is hereby **DENIED.**

IT IS SO ORDERED.